PEOPLE *ex rel* O'DONNELL *v.* THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO.

An Act of the Legislature authorizing and directing the Board of Supervisors of the City and County of San Francisco to audit and allow the claim of a judgment creditor is not unconstitutional, as being judicial in its character.

The Legislature may as well control and direct in this matter as in any other matter of municipal regulation.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

The facts sufficiently appear in the opinion of the Court.

*F. P. Tracy* for Appellant.

I. The Act of April 21st, 1858, for the relief of Hugh O'Donnell is unconstitutional.

1st. It is against the provisions for the protection of private property in the eighth and third sections of the Constitution of California. See sec. 37, art. 4.

2nd. It is an usurpation of judicial powers on the part of the Legislature contrary to article 3, Constitution of California.

II. It is submitted that: *First,* The City and County of San Francisco is a municipal corporation, and that, so far as the said city is concerned, (that being the corporation indebted) it is a corporation holding its property in fee, and having the sole right to administer that property under general laws. That it is not a political division of the State, merely, but as independent in its existence as any other corporation, and not subject to the control of the Legislature, except under such general laws as may be enacted, not for a special case, but for the general management of the affairs of the corporation.

If the city is a mere political division of the State, and has power to contract debts, then its debts are the debts of the State. Then the State can make no grant to the city of lands. The State cannot sue the city, nor can the city owe the State.

Then all sorts of absurdities follow, and the whole theory of municipal corporations, since the rise of cities in the middle ages, and their first resistance of the tyranny of the Legislature in the person of the Emperor, has been a mere delusion and fallacy.

Cities once incorporated have, like any other corporation, a distinct independent existence.    The Legislature can only interfere with them by general laws, or amendments, or repeal of their charters.    The Legislature cannot undertake to administer their local government, and act in the capacity of auditor of the demands against their treasuries.

The doctrine that the Legislature can, by an Act, undertake to determine that a municipal corporation owes a certain debt, and shall pay that debt in a certain manner, takes away all the rights and liberties of the city, and is revolutionary and dangerous.

It falls into the absurdity of saying that a municipal corporation owes so much money and that the Legislature has a right to so determine, because the municipal corporation is a mere political division of the State, and so incapable of owing anything.

The doctrine must go to the length that the Legislature might, by Act, transfer to and vest in any private individual the whole property of any city.

There are no authorities in this case.    Like parricide, against which the Romans had no law, because the crime was thought impossible, such an usurpation by the Legislature has never been contemplated or guarded against, and no Supreme Court of any State ever had to pass upon a doctrine so monstrous as that contended for by this O'Donnell bill.

*Shattuck, Spencer & Reichert and McDougal* for Respondent.

It is contended by appellant, that the Legislature does not possess the power to direct or divert the revenues of the City and County of San Francisco to the payment of particular indebtedness.

It is conceded that the Legislature does possess the power over the State revenues.    It was also distinctly admitted in argument that the Legislature possesses the same power over the county revenues, the counties being only subordinate, subject subdivisions of the State. It is contended, however, that cities (and therefore the City and County of San Francisco) furnish an exception to the rule, and that, as " *municipal corporations*," they had the control and direction of their revenues as charter rights.    It is further suggested, that the creditors of the city, under the laws existing at the time of the pas-

sage of the Act in question, had acquired certain fixed or contract rights, with which legislation could not interfere.

It is submitted that the error of this position lies in this, that municipal corporations under our system are confounded with the "*free cities*" of Europe.   With us, a State, a county, and city, are equally municipal corporations.   It is true, we call a law erecting a city into a special department of the Government, *a charter*, but we do not use the term in which it is applied to a private corporation.   We do not use it to describe *the grant of a franchise*.   Our laws for the organization and administration of the affairs of counties are *provisions*, not *concessions*.   So of our laws for the organization and administration of cities.   Counties have their local government; their Boards of Supervisors, Sheriffs, Clerks, Courts and subordinate officials. They collect and disburse revenues, construct roads and bridges, license ferries, and do all other things required, in the way of local administration and government, under the authorization and direction of State legislation, which is not always general, but frequently particular as to counties.   The interests and necessities of cities generally require more of local government and administration.   Cities and counties do not differ in kind, but in degree.

The correctness of this position will not be disputed, upon careful consideration.   It must follow, that if the revenues of counties may be directed, so may the revenues of cities.

Cities, as well as counties, are but parts of the general State government; the creatures of legislation, and as in their organized constitution subject, even to the extent of absolute repeal, so by the stronger reason subject in all matters of administration.   If the notion advanced by defendant is true, then it would follow that the charter would not be subject to amendment, much less to repeal.

It is an error to suppose that the moneys in a City Treasury are the property of the corporation, in the same sense that property exists in individuals or private corporations; they are moneys collected by a subordinate department of government for the purposes of government, and to be distributed *in obedience to the law*, as it does or may exist for those purposes.

It is an error to suppose that any individual has a contract right in the general revenues collected for city, any more than for county and

People v. Board of Supervisors San Francisco Co.

State purposes. The *necessities* and obligation of government for general and local purposes are constantly changing, and to meet those necessities, *provisions* must be made. To make those provisions is the office of the Legislature.

This power has been exercised without question in every State of the Union, and in no State more frequently than our own during the brief period of our history. The history of legislation for the City of San Francisco furnishes a number of instances of the exercise of the same power questioned in this case.

This is not all the Legislature does in the premises; it takes the ascertainment of claims out of the hands of the Judiciary; invests a commission of its own appointment with this power; requires that the creditors shall take promises, not money, and then diverts a portion of the revenues to the payment of interest due them, and the residue is diverted to the payment of a distinct class of liabilities.

This, it is said, the Legislature may do, thereby levying the established legal rights of O'Donnell against the city as judicially determined. Yet the Legislature does not possess the power to partially retrace her steps and provide for the payment of an antecedent and just debt.

If it is admitted that the Government, as constituted, possesses all power not exclusively granted to the Federal Government, and not embraced within the inhibitions of the Federal or State Constitutions, and if this act is not the exercise of a judicial or executive power, how can this exercise of power by the Legislature be questioned? It does not interfere with the obligations of contracts, and we cannot perceive any other provision of the Federal or State Constitution bearing upon the question.

In reply to the second position assumed by the appellant, it would seem sufficient to remark, that the Judiciary had exhausted the power of its office when it pronounced the final judgment in favor of O'Donnell; that all that remained to be done was the enforcement of the adjudged right; that this exercise of power is in no respect judicial, as is manifest from the fact that it is a power which, in the given case, the Courts could not have exercised.

But if we consider for a moment what are the several and distinct

constituent qualities of *Legislative, Judicial* and *Executive* power, we have a simple solution of any question on this point.

The office of the Legislature is to make LAWS—RULES regulating the relations and conduct of individuals ; and REGULATIONS and *provisons* for the management and administration of Government in all its departments.

*The office of legislation ceases when the statute is enacted.*

The office of the Judiciary is to *ascertain* and *pronounce* upon questions of right or wrong, in pursuance of the established laws. *When it has ascertained, and adjudged, and declared in the form of judgment, the application of the law to the case presented, the office of the Judiciary has ceased.*

Neither the record of legislative action in the statute book, nor the record of the judgments of our Courts, have any greater efficiency than so many written or printed words, *until the Executive power of Government is invoked.*

It is the office of the Executive to see that the *laws* are executed. By *laws*, in this sense, are meant both statute law and the law of cases adjudged as determined by the sentence of the Court.

The various executive and administrative officers of Government are so many arms and members of the Executive body.    They have nothing to do with legislation or judgment, *further than by acts of recognition and execution.*

In the present case, the claim of O'Donnell had been exhibited in the Courts and established against the defendant, but as the means of the *defendant* were subject to the regulations and provisions of then existing legislation, the power to discharge this liability did not exist without legislative aid.    With this aid asked and granted, all that remained to be done was in the way of *administration*, just in the same manner and to the same extent as were it permissible to sue the State ; and had O'Donnell recovered judgment against the State, and the Legislature had directed its payment, the auditing and payment of the amount out of the State Treasury would be a *purely administrative act.*

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

The relator obtained a judgment against the late City of San Francisco for a sum of money, and the Legislature, on the twenty-first day of April, 1858, passed an Act, " whereby the the Board of Supervisors of said city and county were authorized and directed to allow said O'Donnell the amount of his judgment," and also providing " that the Auditor of said city and county be authorized and directed to audit the sum so allowed and issue his warrant therefor; whereupon, and upon the presentation thereof, the Treasurer of said city and county shall pay the same as other indebtedness of the city and county aforesaid." The Board of Supervisors having refused to audit and allow this sum, as by the Act directed, this proceeding is taken to compel them to do so.

It is objected by the appellant's counsel that this Act is judicial in its character, and therefore, unconstitutional. We do not think so. The Legislature neither attempts to create or to adjudicate in respect to a debt against the corporation. It merely, in this instance, makes provision for the payment of a debt already created by the corporation and fixed by judgment. The duty and mode of the payment of debts of corporations of this sort are legitimate subjects of legislative direction. As all the powers and duties of these local governments come from legislative grant, and paying their debts is a legitimate function and duty, it is not possible for us to see why the Legislature may not as well control and direct in this matter as in any other matter of municipal regulation; nor can we see why it does not as well possess *the power*—whatever the expediency of its exercise in any instance— of making this provision in respect to a single debt of the municipality, as in regard to all its debts. In truth, so far as the record shows, (and we cannot look beyond it) there is no other judgment or even indebtedness. The interesting question argued at the bar, as to the extent of the power of the Legislature over the finances of the municipality, does not arise in this case; for this proceeding is only taken to compel the allowance and auditing of the claim by the proper authorities. It was clearly competent, we think, for the Legislature to direct this; and the judgment of the Court below only orders the defendants to obey the Act of the Legislature in this respect.

The judgment is affirmed.