# THE CITY AND COUNTY OF SAN FRANCISCO *v.* BEIDEMAN.

THE bill in this case to enjoin a sale of real estate was held not to be a bill to quiet title under the two hundred and forty-eighth section of the Practice Act, because plaintiff is not in possession ; nor a bill to remove or prevent cloud of title, because, under the averments, no cloud can be created within *Pixley* v. *Huggins*, 15 Cal. 127.

Nor can the bill be maintained upon the ground of preventing a multiplicity of suits.  A single action of ejectment, in which all the tenants of defendant could be made parties, would determine the title ; and a notice of *lis pendens* filed would bind purchasers from the defendant.

Nor can the title be maintained on the ground of a trust; for, assuming that the municipal lands within the city of San Francisco were conveyed by the city to the Fund Commissioners, in trust for her creditors, and that this trust was a portion of a contract, or so connected with the obligation of a contract as that the property was unalterably fixed by that disposition of it, the city would still have the equity of redemption at least, and could dispose of the subject of the trust, with the assent of the Legislature, subject only to the rights of the creditors or their trustees; or the Legislature, as the paramount political authority, could authorize or make such disposition.  But the title thus disposed of would go to the grantee, who would hold the land, subject only to

the trust.   The city could not enjoin a sale of the property by the grantee, or interfere with his use or possession of it, until it became necessary to enforce the trust.

This Court has not decided that a voluntary appropriation, by public act, of property or its proceeds, by a municipal body, when such appropriation is not associated with a contract as part of its obligation or sanction, removes such property or proceeds from the control of the municipal body or the Legislature, or that the terms of the act making the appropriation are unalterable.

*Bond* v. *Supervisors of San Francisco*, (10 Cal.) and other cases affirming the same principle, were put on the ground that the acts of appropriation were part of a contemporaneous contract, and hence within the constitutional prohibition as to impairing the obligation of contracts.

As a general rule, a provision, whether made by a State or a corporation, to meet its debts or engagements, may be regarded as only a means of executing its own policy or transacting its own business, and may be altered or repealed at pleasure.   In other words, such an arrangement is not a contract, but a mere legislative regulation.

The decisions in this Court affirming the validity of the Act of 1858, giving effect to the Van Ness Ordinance, affirmed.

There is no limit as to the quantity of land to which parties in possession become entitled under the Van Ness Ordinance.   All that a claimant of lands within the limits of the city of San Francisco need show, to entitle him to hold as against the city, is that he was in actual possession of such lands on the first day of January, 1855.

What constitutes actual possession within this ordinance, not here defined.

The nature of the possession in this case stated, and the conclusion reached that such possession brings defendant within the ordinance.

APPEAL from the Twelfth District.

Bill for an injunction against a sale of land.   The complaint avers in substance, that the city of San Francisco, as incorporated under the charter of 1850, then became and was the owner and possessor for the use and benefit of the citizens, and for municipal purposes, and other uses and purposes declared and intended by the laws of this State thereunto appertaining, of large tracts and parcels of land within the limits of the present city and county of San Francisco, and among other tracts of certain tracts of land claimed by defendant; that the present city and county of San Francisco, plaintiff, succeeded on the first of July, 1856, to all the right, title and interest in said tracts and parcels of land which belonged to its predecessor, the city of San Francisco; that said city became, from time to time, largely indebted to divers persons and

on divers amounts of scrip and warrants duly issued by said city; and that said city by ordinances passed in 1850, and at other times thereafter, pledged and set apart to be held inviolate all of said real estate, of which the lands claimed by defendant are a part, as security for the payment of said debts and the redemption of said stock and scrip, large amounts of which are still unpaid and unsatisfied; that said city has, since 1850, continued to be largely in debt, which indebtedness now rests upon plaintiff; that defendant claims to be the owner, by title derived from said city and county, of a portion of said tracts or parcels of land lying west of Larkin street, and containing about two hundred and seventy-two fifty vara lots (the tract being described by metes and bounds); that defendant has advertised for sale and is about to sell at public auction three hundred homestead lots in said tract, being the alternate lots and blocks as described in catalogues and maps, copies of which are annexed marked " A." and " B;" that the streets laid out on said map, excepting the avenues running parallel with Bush street, are streets laid out, dedicated and adopted by said city and said city and county, in 1856, pursuant to the Van Ness ordinance, prior to the act ratifying said ordinance, and that the map referred to in said act as the part of the city west of Larkin street and southwest of Johnson street, was duly adopted as the official map of the city and city and county prior to said act; that defendant pretends that he was in actual possession and occupation of the land contained in exhibit " B," by himself or tenants, on the first of July, 1855, and has continued to occupy and possess the same from thence up to the introduction of the Van Ness ordinance in the Common Council, and now claims that by virtue of said ordinance he holds the right and claim of said city and city and county to said land; but plaintiffs aver on information and belief that such pretense is untrue, and that defendant has never been in possession of said land, except about two or three hundred varas thereof, the particular part being unknown to plaintiff; that defendant in view of the passage of said Van Ness Ordinance, and not with the intention of becoming an actual occupant and possessor of said lands, but to seize upon them for mere speculation, got up and arranged certain contrivances to give the appearance of occupation and *bona*

*fide* possession, while, as plaintiff is informed and believes, the same were merely colorable and transient; that no substantial enclosures or permanent fences were built upon the same, but that brush wood and strips of wood were arranged around parts for a time and afterwards removed to other parts, and again and again removed from spot to spot in fraud of the spirit and intention of said acts and ordinances, and that the city and county and not defendant is the owner and in possession of said lands. The complaint then avers in substance that the result of defendant's proposed sale will be that the land will pass in small lots to a multitude of purchasers, and thus the right and title of plaintiff be clouded, embarrassed and involved in a multiplicity of suits, and that defendant, independent of said lands, has not the means to respond in damages; that since the lands were laid out into blocks and streets in 1856 by plaintiff, defendant has not enclosed, occupied or possessed said separate blocks and lots, but as plaintiff is informed and believes, has abandoned his claim to the same, which have since remained unoccupied; that the claim and pretense of defendant is a fraud on said city and county and her creditors and citizens, to whose use and benefit said lands are held and possessed by plaintiff; that defendant has expended but little in improvements, not amounting up to January, 1855, to one-hundredth part of the value of the lands.

Prayer for injunction against said sale at auction, and that after hearing, defendant be decreed to have no right or title to the premises, and that the title of plaintiff be declared paramount.

The County Judge granted the injunction. Defendant moved to dissolve it upon answer and affidavits—plaintiff reading counter affidavits.

The answer to the complaint denies specially each of the allegations of the bill, except that it admits defendant claims the lands described in the complaint and in exhibits A and B, by title derived from the city of San Francisco, and from the city and county of San Francisco through the Van Ness Ordinance and the Act of 1858 confirming the same, as is stated in the complaint, with the exception of certain lots sold by him to purchasers now in possession and claiming under him. He admits that he is about to sell three hundred homestead lots, as stated in complaint, but denies

City and County of San Francisco *v.* Beideman.

that exhibit "A" contains any of such lots, or any of the streets, squares or reservations, as provided for in the Van Ness Ordinance, or any of the land or lots within a certain portion of said tract called "Davis Hollow," and that the western portion of said city was surveyed and mapped out in 1856, as averred in the complaint; avers that on the first of January, 1855, and long prior thereto, and from thence continuously up to the present time, he has been in the actual possession of the land described in the complaint, and of every part thereof, except the lots sold by him as aforesaid, and excepting also "Davis Hollow," a tract of six or seven acres on the eastwardly side of said tract; that as to the tract of land contained in exhibit "B," he has been in the actual, exclusive, quiet and peaceable possession and occupation of it, personally and by his tenants, from January 1st, 1855, and prior thereto, to April 1st, 1858, and up to to the present time, with the two exceptions aforesaid, and also a temporary interruption in 1850 by one Mier as to a portion of a fifty-vara lot, the same being during all that time enclosed with substantial, permanent, strong fences and cross fences, and having thereon houses, tenements and other valuable improvements, erected thereon by defendant; avers that he purchased the land in dispute in 1853 and 1854 for a large and valuable consideration, took possession, and before January, 1855, had expended five thousand dollars in improvements; that since January 1st, 1855, plaintiff has assessed said land for taxes as the property of defendant, and collected the same, and has in some instances sold portions for nonpayment of taxes and given the usual certificates and deeds.

To this answer plaintiff filed a replication, denying on information and belief the counter averments therein contained.

On the motion to dissolve, each party read numerous affidavits tending to sustain their respective allegations, but it is deemed unnecessary to state their substance.

By stipulation, there was put in evidence Ordinance No. 49 of the city of San Francisco, passed August 23d, 1850, entitled "An Ordinance for the creation of City Stock," to be called a "Sinking Fund Stock," by the terms of which ordinance the Controller was to issue proposals for the purchase of such stock "for the erection

and promotion of city improvements," the bonds issued for the stock not to exceed $400,000, redeemable one-third in twelve months, one-third in eighteen months, one-third in twenty-four months, and bearing two per cent. per month interest, payable quarterly. The third section reads as follows : "All the city lots or real estate in the possession of San Francisco shall be held inviolate, and are hereby solemnly pledged and set apart as security for the redemption of said stock and interest at maturity." The ordinance appointed five persons as a Board, entitled " The Commissioners of the Sinking Fund, to have charge of all the real estate belonging to the city," and to lease or sell it, as in their judgment was best, " to provide funds for the redemption of the public debt."

There was also put in evidence Ordinance No. 67, of said city, passed October 1st, 1850, entitled " An Ordinance to amend 'An Ordinance for the creation of city stock.' " This ordinance increased the amount of bonds to $800,000, and made them payable, one-third in one year, one-third in two years, one-third in three years. To carry out these ordinances the city conveyed by deed, dated December 26th, 1850, to the Commissioners appointed, a large amount of real estate, both beach and water lots, wharves and upland property, described by metes and bounds, and in trust for the purposes named in the ordinances. And subsequently, May 24th, 1851, these " Commissioners of the Sinking Fund " conveyed the property to "The Commissioners of the Funded Debt " of the city of San Francisco, created by act of the Legislature of May 1st, 1851, entitled "An Act to authorize the Funding of the Floating Debt of the city of San Francisco, and to provide for the payment of the same," in trust for the purposes named in the Act.

Whether the property conveyed by this latter deed embraced all the real estate belonging to the city, and hence the land in dispute, was matter of argument in the case—plaintiff contending that under the act of May 1st, 1851, the interest of the city in all lands within her limits passed.

The defendant maintained that as the deeds conveyed certain beach and water lots and certain blocks and lots by their numbers, as designated on the map of the city, which numbers did not embrace the Beideman tract—the city not having been at that

time surveyed so far west—that tract was not covered by the deeds.

The Van Ness Ordinance, No. 822, Ordinance No. 845, laying out the lots west of Larkin street and south-west of Johnson street into blocks, lots and streets, and reserving certain portions for hospitals, sites for school houses, engine houses, etc., in accordance with the Van Ness Ordinance, and also the ordinance passed adopting the plan and map made by Commissioners appointed to so lay out and reserve streets, blocks, hospital sites, etc., may be found in note to *Hart* v. *Burnett*, 15 Cal. 627, or in the Act of 1858, 52. Both of these deeds and all of said ordinances and acts were read in evidence.

Further facts appear in the opinion of this Court.

*Heydenfeldt*, for Appellant.

I.   There is no equity in the bill. It seeks only to enjoin a sale. This remedy for that object is only resorted to to prevent a cloud upon the title. Here no cloud can be created. (*Curtis* v. *Sutter*, 15 Cal.; *Pixley* v. *Huggins*, Id.)

II.   The sale would not produce multiplicity of actions; the whole tract is claimed, and one suit might be brought against any number of trespassers. (*Winans* v. *Christy*, 4 Cal. 70; *Natoma Water and Mining Co.* v. *Clarkin*, Id.; *Curtis* v. *Sutter*, 14 Cal.) Besides, there has been no trial at law to determine the title.

III.   It cannot be claimed as a statute remedy to quiet title, because the plaintiff is not in possession. (*Curtis* v. *Sutter*, 15 Cal.; Prac. Act, sec. 254.) The bill alleges defendant to be in possession of a part, claiming title to the whole.

IV.   The answer denies all the equity of the bill, and shows title in the defendant. The denial alone is sufficient to dissolve the injunction. (Milford's Pl.; Daniels' Ch. Pr.)

V.   The title set up is not denied, and is complete. It rests upon grant by virtue of the Van Ness Ordinance. The terms of the grant are explicit. It does not limit the quantity granted. No exposition should be made which is opposed to the express words. It is not allowed to interpret what has no need of interpretation.

What is plain and unambiguous is not the subject of construction. (Smith's Com. sec. 505.)   The provision for reservations to the city proves the quantity intended to be granted to be only limited by the actual possession.  The city might reserve five hundred feet square, out of any lot, so that it did not exceed one-twentieth of the whole.   Five hundred feet·square is the twentieth of about one hundred and thirteen acres ; so much was clearly contemplated, and if so, why not a still greater quantity ?   The cotemporaneous exposition shows the intention to confirm any quantity however large.   (See the debates in Council.)

VI.   The succeeding questions are :  1.  Is the Van Ness Ordinance legitimate ?   2.  Is the defendant in fact within its purview ?   3.  Is there any outstanding title by grant from the city prior to the Van Ness Ordinance ?

1.  If the land in question belonged to the city in full property, there can be no question of her *jus disponendi*.   2.  If it was a trust for given purposes, then the right of the Sovereign to control and alter the trust, and direct the disposition, must be unquestioned, and this was done, and made the defendant's title effectual by the act ratifying the ordinance.  (*Hart* v. *Burnett*, 15 Cal. 578–582.)   3.  To bring the defendant in fact within the purview of the ordinance, he must have been a party in actual possession of the land in controversy, either by himself or by his tenants, on the first day of January, 1855.  (Van Ness Ordinance, sec. 2.)   The actual possession meant by the ordinance is such as would enable the defendant to recover possession from a trespasser or intruder " by legal process."   (Van Ness Ordinance, sec. 2.) For this purpose prior occupancy, with acts of ownership showing a claim of title, would be sufficient.   (*Doolittle* v. *Lindsley*, 2 Atk. 155 ; *Lake* v. *Gaskins*, 5 Cal. 164 ; *Winans* v. *Christy*, 4 Cal. 71 ; *Plume* v. *Seward*, Id. 94 ;  *O' Callaghan* v. *Booth*, 6 Id. 63 ; *Bird* v. *Dennison*, 7 Id. 297 ;  *Wilson* v. *Corbier*, 13 Id. 166.) 4.  It is said the title was conveyed to the Commissioners of the Funded Debt before the Van Ness Ordinance.

1.  This is not shown by the act creating that Board ; they were to have conveyed to them only all of the property of the city which was in the hands of the Commissioners of the Sinking Fund.   2.

No conveyance of this property was made to them.  3. They accepted a conveyance of property which signifies their construction of the act and estops them.  4. The city creditors received their bonds after the conveyance, and took with the view that it was all their security as far as property was concerned.  It was a waiver by them of any demand for further security of the same.  5. Neither the Commissioners of the Funded Debt, nor the creditors, are parties to the bill; they are not here complaining of any invasion of their rights.  If the property was conveyed for their security, the city has the equity of redemption—she has the right to convey that, and if she pays the debt, her conveyance vests a full title.

Nor is there any force in the reliance of complainant upon the Ordinance of October, 1850, and upon the Charter of 1851.

The ordinance devoted the city property to the payment of a debt, which was to be created by obtaining money to be borrowed. The money was not borrowed, and the debt was not created, so the entire object of the ordinance fell. .

The provision in the Charter relied on is the mere direction as to what species of revenue shall constitute a fund for the payment of debts.  It gave no lien, it provided no trust, it made no contract, nor did it place any restriction upon the city in relation to the disposition of the property.

*Nugent & Judah,* and *Thornton, Williams & Thornton,* also for Appellant.

I.  The Court erred in refusing to dissolve the injunction, because the answer and affidavits filed by the appellant show him to have been in the actual possession of the land in controversy long prior to, and on the first day of January, 1855, and continuously ever since, under the provisions of the Van Ness Ordinance, and also under the Act of the Legislature of 1858, ratifying and confirming said ordinance.  (Van Ness Ordinance ; Acts of 1858, 52 ; *Hart* v. *Burnett,* 15 Cal. 530 ; *Holladay* v. *Frisbie,* Id. 630 ; *Payne et al.* v. *Treadwell,* 16 Id. 220 ; 4 Bibb, 389 ; 4 Dana, 486 ; 11 Pet. 53 ; 10 Pet. 442 ; 13 Cal. 166 ; 5 Id. 166 ; 1 McAll. R. 133 ; *Preston* v. *Kehoe,* 15 Cal. 315 ; 16 How. 507 ; 17 Id.

416; *English* v. *Johnson,* 17 Cal.; *Coryell et al.* v. *Cain,* 16 Id.)

II.   Because the plaintiff had a legal and equitable remedy at law, if entitled to any relief.

III.   Because the answer denies fully all of the alleged equities of the complaint.   (*Gardiner* v. *Perkins,* 9 Cal. 553.)

IV.   Because the complaint on its face shows that the plaintiff is not entitled to maintain the action, nor entitled to the relief demanded in the complaint.   (*Curtis* v. *Sutter,* 16 Cal.)

V.   Because the answer and accompanying affidavits show that the appellant was in the actual possession of the land in question, claiming and holding adversely; and the weight of evidence contained in the affidavits filed on both sides are in favor of the title under which appellant claims and holds.   (*Smith* v. *Wilson,* 10 Cal. 528.)

VI.   Because the affidavits and answer show and prove a legal title in the appellant to the land described in the complaint.   (Van Ness Ordinance; Act of 1858, 52.)

VII.   Because according to the allegations of the complaint, a sale, execution and delivery of deeds by the appellant for any part or all of said lands, would cast no cloud on plaintiff's title, nor produce irreparable injury, or cause a multiplicity of suits.   (*Curtis* v. *Sutter,* 16 Cal.; *Branch Turnpike Co.* v. *Supervisors of Yuba County,* 13 Cal. 190.)

*Geo. Barstow,* also for Appellant.

I.   The Van Ness Ordinance was a relinquishment or quit claim on the part of the city to the settler of all the land of which he was in actual possession by himself or tenant on the first day of January, 1855, and continued so in possession up to the date of this ordinance.

1. There was no limitation of quantity, either in express terms or by necessary implication from express terms.   2. There was no intent to limit, because no limit is expressed; but there was expressed intent to quiet title.   3. The intent must be inferred from the language alone, unless ambiguous; and here there is no pretense of ambiguity.   (Smith's Commentaries, sec. 505.)

II. The act of the Legislature confirming this ordinance was the exercise of the supreme or sovereign power. Such a legislative grant is equally valid, whether made to individuals or to a class or classes of persons.

1. Thus the ordinance was a release or quit claim by the city to whom it might concern. 2. The act was a grant, which gave title, and this even though the ordinance were void at the date of the act. (*McCaughal* v. *Ryan*, 27 Barb. 376; *Seabury* v. *Field et als.*, 1 McAllister's C. C. R. 1; *Friedman* v. *Goodwin et als.*, Id. 142; *Griffing* v. *Gibb*, Id 212; *Woburn* v. *Middlesex*, 7 Gray, [Mass.] 106; *Bellows* v. *Copp*, 20 N. H. 492; *Hart* v. *Burnett*, 15 Cal. 530; *Payne* v. *Dewey*, 16 Id.; *Brown* v. *City of San Francisco*, Id. 451.)

III. What is actual possession? It has been repeatedly held by this Court that the whole doctrine of possession, if not created, must necessarily be controlled and modified by the peculiar nature of the subject matter and by surrounding circumstances. In other words, in order to determine what is actual possession in a given case, regard must be had to the nature of the land and to its uses or nonuse. (*English* v. *Johnson*, 17 Cal. 107; *Atwood & Walch* v. *Fricott*, Id. 37; *Wright* v. *Whitesides*, 15 Id. 46; *Garrison* v. *Lampson*, Id. 93; *Coryell* v. *Cain*, 16 Id. 567; *Tilton* v. *Hunter*, 11 Shepley, [Me.] 29; *Poignard* v. *Smith*, 6 Pick. [Mass.] 172; *First Parish* v. *Smith*, 14 Id. 297; *Ewing* v. *Burnett*, 11 Pet. 52, 53; *Ellicott* v. *Pearle*, 10 Id. 442; *Boyreau* v. *Cambell et al.*, 1 McAllister's C. C. R. 133; *Wilson* v. *Corbyer*, 13 Cal. 166; *La Rue* v. *Gaskins*, 5 Id. 164; *Plume* v. *Seward et al.*, 4 Id. 94; *Myers et al.* v. *McMillan's Heirs*, 4 Dana, [Ky.] 486; *Brumfield* v. *Reynolds*, 4 Bibb. [Ky.] 388; *Winans* v. *Christy*, 4 Cal. 71; *Noyes* v. *Dyer*, 12 Shepley, [Me.] 268; *Thayer* v. *McLillan*, 10 Shepley, [Me.] 417; *O'Callaghan* v. *Booth*, 6 Cal. 63; *Sunol* v. *Hepburn et al.*, 1 Id. 262; *Elkthorp* v. *Dewing*, 1 D. Chipman, [Vt.] 144; *Doolittle* v. *Lindsley*, 2 Aiken, [Vt.] 155; *Rose* v. *Davis et al.*, 11 Cal. 133: *Foxcroft* v. *Barnes*, 29 Shepley, [Me.] 128; *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. [Me.] 275.) Taking these authorities for a guide, Beideman has brought himself not merely within one, but within nearly all the requisites of actual possession known to the law.

*Hoge & Wilson*, for Respondent.

I.   The merits of a whole case ought not to be tried on a motion to dissolve an injunction.   In cases of special injunction, like this, the rule that the injunction must be dissolved on the coming in of the answer denying the merits, does not prevail.   The matter is addressed to the sound discretion of the Court.   (*Poor* v. *Carlton*, 3 Sum. 73–76, 82, 83 ;  *Orr* v. *Littlefield*, 1 Wood & Min. 13, 19 ; *Roberts* v. *Anderson*, 2 Johns. Ch. R. 204 ;  *Bank of Monroe* v. *Schemerhorn*, 1 Clarke, 303 ;  *Gardiner* v. *Perkins*, 9 Cal. 553 ; *Chetwood* v. *Brittain*, 1 Green Ch. R. 439, 452 ;  *Burnett* v. *Whitesides*, 13 Cal. 156 ;  Wyatt's Prac. Reg. 236 ;  *Livingston* v. *Van Ingen*, 9 Johns. 567, 570 ;  *Oxford* v. *Richardson*, 6 Vesey, 707 ; 14 Id. 132 ;  *Chase* v. *Manhardt*, 1 Bland. 336 ;  *Maxwell* v. *Ward*, 11 Price, 17.)

II.   If this injunction be dissolved, the cause would still remain for trial on the merits, and the persons buying at defendant's sale would be subject to suit, and hence a great multiplicity of actions arise.   To prevent this is good ground for continuing the injunction.   (*Mayor etc. Brooklyn* v. *Meserole*, 26 Wend. 139 ;  *Livingstone* v. *Van Ingen*, 9 Johns. 569, 570, citing cases; *Mohawk and Hudson River R. R. Co.* v. *Artcher*, 6 Paige, 87, 88 ;  *Sutton Harbor Imp. Co.* v. *Hitchens*, 9 Eng. Land Eg. 41 ;  1 Eden on Inj. 11–1, note 1, 11–2 ;  2 Id. 411–1, note 414–1, note 416 ;  2 Story's Eq. Juris. sec. 856 *et seq.*)

III.   This is not a case where the Court should dissolve the injunction on *ex parte* affidavits.   There is a great conflict of witnesses, and a jury ought to determine the facts.

IV.   The evidence shows that Beideman's inclosures were merely for speculative purposes, and for marking his boundaries, and were not those clear, distinct, permanent and valuable improvements, showing the actual and *bona fide* settler, for his own uses and occupancy.   Possession is of two kinds—1st, constructive ; 2d, actual. As to the first kind, see *Elliott* v. *Pearle*, 10 Pet. 441.   As to actual possession, see *Plume* v. *Seaward et al.*, 4 Cal. 92 ;  *Murphy* v. *Wallingford*, 6 Id. 649 ;  *Bird* v. *Dennison*, 7 Id. 311.

In this case, the large quantity of land taken by Beideman, (174

acres) the frail character of his improvements, his contests with persons seeking actual settlements, his numerous deeds for years back, and his now offer of three hundred homestead lots, show the mere speculator, and not the *bona fide* settler.

In a letter of Wm. Wirt, Attorney General of the United States, (2 Vol. Opinions of Atty. Genl. 192–3) this very point is made.

The deeds of Beideman show considerations of about $20,000, and the answer only claims an outlay of about $5,000. The tract is now alleged to be worth $50,000 in the complaint, and not denied in the answer. This is mere speculation.

If this were *ranch* property, twenty miles from the city, it might do ; the work, labor, and inclosures might do ; but it is city property, for years in the city limits, and different improvements are required. (*Plume* v. *Seaward*, 4 Cal. 96 ; *Bird* v. *Dennison*, 7 Id. 311.)

As to the assessment for taxes, the answer does not show that Beideman paid them, but only that the lands were assessed to him.

By law citizens must hand in their own lands for assessments. The officers do these duties, and the city is not bound by anything except her own express acts under ordinances, etc. But every man who claims is taxed, and if two or more claim adversely, all are separately assessed. (Statutes 1857, 326, 327, secs. 3 and 4.)

V. The defendant claims under the Van Ness Ordinance, No. 822. For the foregoing reasons we contend that he had not the actual possession.

But the Van Ness Ordinance, for other reasons, could not apply to the Beideman tract. To get at the proper construction of this ordinance, and of the act of the Legislature confirming it, the whole act and all its parts are to be considered, as well as all other statutes *in pari materia*, for the purpose of ascertaining and carrying into effect the intention of the Legislature. (Smith's Com. 647, 662, 663, 761, 765, 740, 819 ; 2 vol. Opin. of Attorney General of U. S. 44, 306.)

The acts and ordinances upon the subject are: Act of 1858, 52, and the ordinances therein recited ; City Charter 1851 ; Act of Congress, May 23d, 1844 (5 U. S. Stat. 657) ; Act of Congress, March 3d, 1853 (10 U. S. Stat. 244, sec. 8) ; General Land Laws of United States.

The latter part of section one, Ordinance 822, is borrowed from the Act of Congress of May 23d, 1844. So of the Act of 1858, 56, sec. 1. Under the Act of Congress of 1844, the town may enter the lands " in trust for the several use and benefit of the occupants thereof according to their respective interests," etc. Then provision is made for " the disposal of the lots in such town," This act contains two clear provisions : 1st, that the entry shall include only such land as is actually occupied by the town ; 2d, " and shall not in the whole exceed three hundred and twenty acres," or two quarter sections. Paper limits do not avail, and the land must be occupied not by a few individuals holding large tracts, but by that multitude constituting a town, and that town must " actually occupy " the whole land to be entered.

" Lot of ground " means, " a small piece of land in a town or city usually employed for building a yard or garden, or such other urban use. Lots are in-lots or those within the boundary of the city or town; and out-lots, or those out of such boundary and which are used by some of the inhabitants of such town or city." (2 Bouv. Law Dic. 94, 85.) Such are the lots contemplated by the Act of Congress, otherwise there is no sense in limiting a town to three hundred and twenty acres, nor is there any meaning in the phrase " that the entry shall include only such land as is actually occupied by the town."

The Van Ness Ordinance is based mainly on this Act of Congress and borrows its language, and the ratifying Act of 1858 is of the same import. The sixth section of the Act of March 3d, 1853, (10 U. S. Stat. 244–248) extends the preëmption law over California, and authorizes the usual entries of one hundred and sixty acre tracts by settlers or preëmptioners. But section eight provides that these preëmptioners shall not come into the towns, but " that the public lands occupied as towns or villages shall not be subdivided [into quarter and half quarter sections] or subject to sale, or to be appropriated by settlers under the provisions of this act," but the whole of such lands to be subject to the provisions of the Act of May 24th, 1844.

It is not necessary to assume here what some think, that under this act only three hundred and twenty acres can be entered by a

town.   We can assume that " the whole of such lands occupied as towns or villages," shall be entered under the Act of 1844.   The Act of 1844 says: " The entry shall include only such land as is actually occupied by the town, etc., and shall not in the whole exceed three hundred and twenty acres."   The Act of 1853 only alters the last clause, but leaves the other in full force.   Therefore if the population occupied actually six miles, thickly peopling it in settlements on town lots, the whole might be entered.   But where not actually occupied by the town, but only by an individual claiming one hundred and sixty acres, the town could not enter it; such tracts are expressly excluded by the Act of 1853.

These acts of Congress are the foundation and *substrata* of the Van Ness Ordinance.   When we find these actual occupants and possessors spoken of, those only are meant who are within the scope and protection of those acts of Congress; that is, the small property holders—the men occupying town lots and not holding quarter sections.   The defendant then being the actor, the moving party should have shown that he came within the provisions of the Van Ness Ordinance, and was a small lot holder, and that the town— that is, the population, extended over his tract.

This tract, though within the proper limits of the city, is an outside tract, and not " actually occupied by the town," and therefore is not within either of the Acts of Congress referred to, nor the Act of the Legislature, nor the Van Ness Ordinance.

The evidence shows the existence of a pueblo at San Francisco before July 7th, 1846 ; and this establishes the city's claim to four square leagues, embracing the land in controversy. (*Hart* v. *Burnett*, 15 Cal. 530.)   This decision also shows the policy of the Mexican Government in building towns to be, to grant only one hundred varas square, and one lot to one person.   The Van Ness Ordinance refers to the old pueblo, to her grants of building lots, and confirms the same, and provides for a further prosecution of the pueblo claim for the use of the possessors—the same general policy being pursued, and actual *bona fide* settlers and occupants of town lots were intended to be confirmed in their possessions, and no such injustice as to give to one person one hundred and sixty acres of land was contemplated.

30

The whole object was for the benefit of the many; for the Van Ness Ordinance applies as well inside of Larkin as outside to actual settlers on town lots.   It was intended that if the city succeeded in her pueblo claim, the settlers on town lots should have the benefit; if she did not succeed, still an entry under the Act of Congress should be made to accomplish the same object.   There is but one single class of persons contemplated, and that is the citizens actually populating the town and residing on building or house lots.

The city is here a trustee for certain purposes; she was so when a pueblo; she is so now, and under the Van Ness Ordinance is continued as such.   (*Hart* v. *Burnett*, 15 Cal.)   Property not disposed of yet remains in the city as trustee.   The Van Ness Ordinance is on the subject of this trust.   Beideman claims under it.   A dispute arises as to whether he takes a lot or two hundred and seventy-two lots.   He is interfering with the trust—claiming in fraud of it.   It is a direct case for the interference and jurisdiction of a Court of Equity.   (2 Story's Eq. Jurisp. 229, 293, sec. 961; Mitford's Eq. Pl. 134; *Curtis* v. *Candler*, 6 Madd. Ch. R. 84, 123; *Treadwell* v. *Curtis*, 5 Gray, 341; Hill on Trustees, 543, and cases cited; *Female Association of N. Y.* v. *Beekman*, 21 Barb. 568; *Brown's Adm'r* v. *Wright*, 4 Yerg. 57; *Lucas* v. *Blair*, 12 Gill. & Johns, 12–14.)

In the last case cited, an injunction was regarded as proper and necessary to avoid a multiplicity of actions at law.

In *Curtis* v. *Sutter*, cited by appellant, the parties claimed by adverse titles.   Here the title of Beideman is claimed under the city.   Here, too, as to Beideman ever being in possession at all, is a question of fact.   Beideman is here charged with a fraud on the law; a fraud on the trust; a mere fictitious, illegal and pretended possession under the law.   *Curtis* v. *Sutter* does not decide that the injunction should never have been granted, but only that it was properly dissolved on the answer.   The appellants questioned that only; the Court held it properly dissolved, saying that their rights were not affected under *lis pendens*.   There is nothing, then, to induce dissolution here.

As to possession, it is not a positive or absolute term, but relative—not only relative, but subject to many qualifications, as constructive, actual, etc.

1. Possession, in absence of proof, is always presumed to go with the title.   2. Possession under color of title by deed goes to limits of boundary where possession is of part.   3. Possession under pre-emption law or possessory acts goes to outside boundaries if possession is had of part.   4. But simple possession without right only goes to extent of actual occupancy, and ceases with it as against the title.   In this case, the city has the title and right, and it is as against that, that Beideman's possession is to be considered.   That is, Beideman's possession must be considered independently of the Van Ness Ordinance.

Not one of the cases cited by the appellant was a case of a simple, naked possessor against the holder of the legal title, which is the question here.

Independently of whether the Van Ness Ordinance gave title to Beideman, look at the question of possession.   Before the conquest of California, here was a pueblo owning lands four leagues square. With the title, the city got legal possession ; the legal owner is in possession of the whole tract.   (*Miller* v. *Shaw,* 7 Serg. & R. 141–145 ; *Lessee of Potts* v. *Gilbert,* 3 Wash. C. C. R. 458, 459, 475, 478 ; *Brimmer* v. *Proprietors of Long Wharf,* 5 Pick. 138.)   We start out, then, with title in the city and possession in the city.   The defendant must show, as a mere possessor without right, how he obtained the full *possessio pedis* against the true title. He relies on an inclosure—it must be a substantial inclosure. (*Jackson* v. *Warford,* 7 Wend. 65, and cases cited ; *Jackson* v. *Schoonmaker,* 2 Johns, 230, 234 ; *Murphy* v. *Wallingford,* 6 Cal. 649.)   The Possessory Acts of the Legislature never applied to towns, and could not apply to San Francisco, she having title to her lands.

Defendant was not a possessor in good faith ; good faith not to himself, but to other settlers.   If a settlement for speculation, it is bad faith.   It being city property, its occupation must have been according to the policy of the law and the ends intended to be accomplished.   (*Bird* v. *Dennison,* 7 Cal. 311.)   Not only do we start out with the title and possession in the city, but in 1856 we see the city sending her officers on the land, mapping it out, claiming ownership, opening streets and public squares ; this fact in

*Plume* v. *Seward* (4 Cal. 96, 97) was held an act of possession and ownership.

But Beideman acquiesces in this, and disclaims ownership or possession of the streets, squares and reservations. This being the case, it was impossible for him to have possession of the separate blocks, except by a separate inclosure of each ; this he did not make.

If after this dedication of the streets and Beideman's admission that he lost possession of them, (for the title to the streets and possession also remained in the city, subject only to the easement of the public passing over it) he had actual occupation of part of a block, a whole block, or several blocks, that possession did not pass over the streets and enter the other blocks. The moment he quit the actual possession of one block, the legal possession of the city was restored. (*Lessee of Potts* v. *Gilbert*, 3 Wash. C. C. R. 478, 479 ; *Jackson* v. *Richards*, 6 Cow. 623, and cases cited ; *Jackson* v. *Woodruff*, 1 Id. 286–7.)

If Beideman had title to the whole under the Van Ness Ordinance, No. 822, the mapping of the land did not take it away ; but assuming that he could not claim one hundred and sixty acres, then he lost possession, if he ever had it, by the map and dedication of the streets, and abandonment of their possession, unless he separately inclosed them, which he did not.

Thus the city having title again became restored to possession when suit was brought.

V. The property of the city of San Francisco, including the property in controversy in this suit, was long since devoted irrevocably to the payment of the public debt of the city. It was therefore beyond the reach either of the city, or of the Legislature of the State. The Act of 1858, if it attempts to interfere with this property, and to make any disposition of it contrary to the trusts to which it was thus devoted, is unconstitutional and void under the Constitution of the United States and of this State. (Ordinances Nos. 49, 67 ; Charter of 1850, City of San Francisco ; Charter of 1851, sec. 14 ; Acts of 1851, 361, 327, 387, 390 ; Charter of 1855 and 1856 ; *People ex rel. Tallant* v. *Woods*, 7 Cal. 579 ; *People ex rel. Tallant* v. *Bond*, 10 Id. 571 ; *Curran* v. *State of Arkansas*, 15 How. 304.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This was a bill filed by the plaintiff below, respondent here, to enjoin a sale by the defendant of a tract of land which the plaintiff claims, and which is in the possession of the defendant.    The County Judge granted the injunction prayed for, and on motion, refused to dissolve it.   From these orders the defendant appeals.

The bill shows no equity upon its face.   It is not a bill to quiet title under the two hundred and thirty-fourth section of the Practice Act, because the plaintiff does not show itself in possession.   It is not a bill to remove or prevent a cloud upon title, because no cloud can be created according to the statements of the bill.   (*Curtis* v. *Sutter*, decided at the January term; *Pixley* v. *Huggins*, 15 Cal.)

Nor can the bill be maintained upon the ground of a prevention of multiplicity of suits.   A single action of ejectment would determine the whole title.   All the tenants can, under our practice, be sued together, and the right of the plaintiff fully vindicated in a single suit.   No new embarrassments or trouble could arise from sales by Beideman *pendente lite*, for by filing a notice of *lis pendens*, the subsequent purchasers would be mere volunteers, whose rights would be as conclusively fixed by the judgment against Beideman as if they were parties to the litigation upon the subject of which they intruded.

Not upon the ground of a trust.   We see no sufficient evidence that this land was ever conveyed by the city in trust for her creditors; but if this were the case, and if it were further true—which is not conceded—that the trust alleged was a portion of a contract, or so connected with the obligations of a contract as that the property was unalterably fixed by that disposition of it, still this assumption would not aid this bill.   For in the case supposed, the city of San Francisco would still have the equity of redemption at least, and could dispose of the subject of the trust, with the assent of the Legislature, subject only to the rights of the creditors, or of their trustees; or the Legislature, as the paramount political authority, could authorize such disposition.   (*Hart* v. *Burnett*, 15 Cal.; *People ex rel. O'Donnell* v. *The Supervisors*, 11 Cal. 206;

*Payne and Dewey* v. *Treadwell*, 16 Cal.)    But the title thus disposed of would go to the grantee, who would hold the land, subject only to the trust.    Until it became necessary to enforce the trust, or to apply the trust property to its purposes, there is no pretense of any right to an interference on the part of the city with the use of the property or its possession by the grantee.

We may remark, that we have never held that a voluntary appropriation, by public act, of property, or the proceeds of property, by a municipal body when such appropriation is not associated with a contract as a part of its obligation or sanction, removes such property or proceeds from the control of the body or the Legislature, or that the terms of the act making the appropriation are unalterable.    The case of *Bond* v. *The Supervisors* (10 Cal.) and those affirming the same principle, were put upon the express ground that the acts of appropriation entered into and became a part of a contemporaneous contract, and therefore fell within the constitutional prohibition, which forbids an impairing of the obligation of contracts.    But generally, a provision, whether made by a State or a corporation, to meet its debts or engagements, may be regarded as only a means of executing its own policy or transacting its own business, and may be altered or repealed at pleasure. In other words, such an arrangement is not a contract, but a mere legislative regulation.

But even if we were mistaken in this view, it is impossible for us to see how the order of the Judge below can be sustained.    We have affirmed repeatedly, and in the most solemn forms, the validity of the Act of 1858, giving effect to the so-called Van Ness Ordinance.    We adhere to our conclusions upon that question.    It is not for us to speculate upon the policy or impolicy of those acts. We are not responsible for the acts of the city or of the Legislature. We must give effect to them when no constitutional objection exists, according to their true intent and meaning, as they are to be deduced from the recognized rules of interpretation.    We can have no doubt as to the meaning of the ordinance.    The language is too plain to need the uncertain aid of cotemporaneous understanding. When the act says that " the city of San Francisco relinquishes and grants all the right and claim of the city to the lands within

City and County of San Francisco *v.* Beideman.

the corporate limits to the parties in the actual possession thereof, by themselves or their tenants, on or before the first day of January, 1855, and to their heirs and assigns forever," and no limitation of the quantity of the land so possessed is made, we cannot add such limitation, unless we had the power to make the ordinance conform to our own views and notions, instead of determining what the city and the Legislature have done.    All that is necessary for a claimant to show, in order to entitle him, as against the city, to hold land within the limits, is to show that he was in actual possession of said land on the first day of January, 1855.    It is not necessary to define what constitutes an actual possession within the meaning of this ordinance ; indeed, it is almost impossible to give a definition which would apply to and cvoer all claims within the meaning of the ordinance, and include none which do not so come. When we look into the various proofs of this case, in the shape of affidavits, we have no hesitation in concluding that the weight of the testimony does show such a case on the part of the defendant as would bring him within the ordinance, and authorize the dissolution of the injunction.    An actual inclosure, the defendant residing or having tenants and a dwelling within it, the continued claim to the property, holding a deed purporting to convey the title, selling a portion, using a portion for a milk ranch or other agricultural purposes, the laying off of the property into lots, making leases, and the occupation of tenants, fencing in smaller portions of the tract, and repeated acts of dominion over different parts of it—these acts, continued or done at intervals for a series of years, would seem conclusive of the fact of actual possession, and would not be rebutted by the mere fact that occasionally an exterior fence was out of repair, or that it was not always sufficient to prevent forcible intrusion into the premises by persons or cattle ; nor would it be rebutted by an occasional trespass upon small parcels of the tract, committed by persons setting up no title save that of mere entry and possession.    We do not mean to say that any one of these acts, much less that an inclosure only sufficient to mark a line of boundary, would be enough ; nor that even a substantial inclosure which might at the time of making it have been sufficient to keep out men or cattle, would alone be sufficient, if the party making it did nothing

more, and especially if he abandoned or never lived on the premises, or made no improvements, or indicated no purpose of occupation by himself or tenant; but this is not the case here, and it is not necessary to pass upon such a question.   We think, however, a concurrence of all the acts to which we have made reference does bring the case within the principle, and that the preponderance of the proofs is greatly in favor of this state of things.   In this condition of the proofs it would be doing great injustice to retain the injunction ; for if the city has any rights in the premises, she has a plain, speedy and adequate remedy in an action of ejectment, when the proofs can be regularly brought out in a mode much more satisfactory than by *ex parte* affidavits. ·

The orders appealed from are reversed, and the cause remanded, with directions to the Court below to dissolve the injunction.

COPE, J.—I concur in the view that the complaint does not disclose sufficient equity to authorize an injunction, and I deem it unnecessary to express any opinion upon the other questions referred to by Mr. Justice Baldwin.   I do not understand that there is any controversy as to the validity of the Van Ness Ordinance, but it is proper for me to say that I regard that question as definitively settled by the previous decisions of this Court.