[No. 2,876.]

# RICHARD H. SINTON, D. J. OULLAHAN, RICHARD J. BUSH, CHARLES CORKERY, J. M. BYRNE, EDWARD BOSQUI, GLUYAS & DUTTON, and WILLIAM HARNEY v. MUNROE ASHBURY.

Power of Legislature over Affairs and Property of Municipal Corporations.—The Legislature has the constitutional power to direct and control the affairs and property of a municipal corporation for municipal purposes, and may, for such purposes, so control its affairs by appropriate legislation as ultimately to compel it, out of the funds in its treasury, or by taxation, to pay a demand which in good conscience it ought to pay, though there be no legal liability to pay it.

Opening of Streets a Legislative Municipal Purpose.—The opening of streets in a city is clearly a municipal purpose; and whether the cost of such enterprises should be borne by the contiguous property, or by all the property of the city, or a certain proportion by each, is a matter for legislative discretion.

Constitutionality of Act to Pay San Francisco Montgomery street Extension Commissioners.—The Act of March 4th, 1870, requiring the City and County of San Francisco to advance out of its treasury a sufficient sum to pay for the services of the Commissioners and certain others employed on the proposed extension of Montgomery and Connecticut streets (Stats. 1869-70, p. 146): *held*, to be clearly constitutional.

Original application in the Supreme Court for mandamus.

The grounds upon which the defendant attacked the Act of March 4th, 1870, and rested his defense to this application for mandamus, are thus stated in the affidavit of Mayor Selby, referred to in the opinion:

" That he is advised and believes, and hereby charges and states, that the validity of the proceedings for the extension of Montgomery street and Connecticut street is questioned and attacked, and that it is questionable and doubtful whether or not the proceedings for the extension of said streets will be sustained; that in the event the said proceedings heretofore had should be declared null and void and of no effect, the said streets will not be extended, and no

assessment will be made for any damage, costs, expenses, or charges, and none will' or can be collected; and that the City and County of San Francisco would thereupon be entirely without any remedy to collect what the County Judge might compel it to pay to the applicants applying to him to fix their compensation and amount of expenses."

The amount allowed by the County Judge against the city was thirty-two thousand seven hundred and thirty dollars and ninety-six cents; but as anticipated by the Mayor, the streets were never extended; and no assessments were ever collected to reimburse the city and county treasury.

*W. H. Patterson*, for Relators.

When a person is clothed with power and has assumed the duties of a public officer, he has taken upon himself the obligation to perform those duties; and if he neglects or refuses to do so, any person, whose rights are thereby injuriously affected, is entitled to demand relief, and mandamus is the proper remedy. (Moses on Mandamus, 14.)

There is no constitutional question involved. The matter of the compensation of the relators, directed to be ascertained and paid by the Act of the Legislature, was peculiarly within its province and jurisdiction in the exercise of the sovereign power of taxation. (*People* v. *Allen*, 42 N. Y. 378; *Litchfield* v. *Vernon*, 41 N. Y. 123; *People* v. *Mayor of Brooklyn*, 4 Comstock, 419; *Guildford* v. *Supervisors of Chenango Co.*, 3 Kernan, 133; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; *The Providence Bank* v. *Billings*, 4 Peters, 514; *Beale* v. *Amador Co.*, 35 Cal. 624; *Blanding* v. *Burr*, 13 Cal. 350; *Howell* v. *The City of Buffalo*, 37 N. Y. 267; *Thomas* v. *Leland*, 24 Wend. 65; *Sharp* v. *Contra Costa Co.*, 34 Cal. 284; *People* v. *McCreery*, 34 Cal. 432; *People* v. *Alameda Co.*, 26 Cal. 641.)

*W. C. Burnett,* for Respondent.

The Auditor must exercise his *judgment* and *discretion* in passing upon claims presented to him. Mandamus would not lie against him, but should have been brought, if at all, against the Supervisors. (Moses on Mandamus, 15; *Tremond* v. *Crippen,* 10 Cal. 211; *Ludlum* v. *Judge Fourth District,* 9 Cal. 7; *People ex rel. S. F. Gas Co.* v. *Supervisors of San Francisco,* 11 Cal. 42.)

There was no legal or moral obligation, on the part of the City and County of San Francisco, to compensate the relators, nor is the purpose of their payment a municipal one. The demand for payment does not arise from any act of the city and county as a municipal corporation, or as agent of the State Government, nor out of contract. The passing over of the money would be an advance for a time, without consideration, to relators, with a chance of receiving the same amount of money from another source than from relators. No municipal purpose moving to the payment, it cannot be compelled. (*Atkins* v. *Town of Randolph,* 31 Vt. 226; *Bowdoinham* v. *Richmond,* 6 Greenleaf, 112; *Brunswick* v. *Litchfield,* 2 Greenleaf, 28; *Hampshire* v. *Franklin,* 16 Mass. 88; *Hasbronck* v. *Milwaukie,* 13 Wis. 37; *Tyson* v. *School Directors,* 51 Penn. St. 9; *Grogan* v. *San Francisco,* 8 Cal. 590; *Low* v. *Marysville,* 5 Cal. 214; *Hammet* v. *Philadelphia,* 65 Penn. St. 146.)

By the Court, CROCKETT, J.:

This is an application for a mandamus, to compel the Auditor of the City and County of San Francisco to issue his warrant on the General Fund of said city and county for the several amounts found to be due to the relators respectively, by the County Judge, in accordance with the provisions of the Act of March 4th, 1870. (Stats. 1869–70, p. 146.) The appli-

cation is resisted chiefly on the ground that the Act is unconstitutional, and, therefore, void. It appears from the record that proceedings were commenced by the Board of Supervisors under the Act of April 4th, 1864 (Stats. 1863–4, p. 352), for the extension of Montgomery and Connecticut streets, in said city; and the relators were appointed Commissioners to assess the damages and benefits to the property to be affected by the proposed improvement. By the provisions of the last mentioned Act, all the expenses of the undertaking, including the compensation of the Commissioners, were to be borne by and assessed upon the property to be benefited by the improvement; and it was made the duty of the Board of Supervisors to ascertain and declare what property would be thus benefited, and would, therefore, be liable to assessment. This duty was performed, and the Commissioners proceeded to make the assessments as required by law. By the Act of March 4th, 1870, the County Judge was authorized to hear and determine, on the application of the Commissioners, the amount due to them for their services, and for counsel fees, clerk hire, office rent, and other necessary incidental expenses; and on ascertaining the amount due it is made the duty of the County Judge to file his decision or determination with the Auditor of the city and county, who shall, thereupon, draw his warrant on the General Fund in the treasury of the city and county for the amount so ascertained to be due, and the Treasurer is directed to pay the warrant. The amount so paid out of the treasury is to be refunded by assessments on the property benefited by the improvement. The Act further requires that notice of these proceedings be given to the Attorney for the city and county; and the County Judge is authorized to hear testimony and to examine the Commissioners under oath. It appears in the case that the County Judge heard the application of the Commissioners, after due notice to the City and County Attorney, and made his decision in writing, determining the

amount due, and filed the same with the Auditor, who refuses to ·issue his warrant because he entertains a doubt whether the Act of March 4th, 1870, is a constitutional and valid enactment.

The argument, by which it is sought to impeach the validity of the Act is, that when the Commissioners were appointed, and rendered the services for which they now seek compensation, the city and county were not, and are not, under any legal or moral obligation to pay for such service, inasmuch as the Act of April 4th, 1864, under which the proceedings for extending the streets were commenced, expressly provides that the entire expense of the work shall be defrayed by assessments on the property benefited by the improvement. It is insisted that the Commissioners accepted their employment, and performed the service, with full knowledge that their services were to be paid for in this method, and not otherwise, and hence that the city and county were under neither legal nor moral obligation to pay for them; and it is denied that the Legislature has the power, under the Constitution, to appropriate the funds of a municipal corporation towards the liquidation of a demand, which the corporation was not under even a moral obligation to pay. It is said that the funds in the treasury of the corporation were raised by taxation, for municipal purposes only, and can be applied to no other; and that to apply them in satisfaction of a demand, which the corporation was not bound, in good conscience, to pay, would be to appropriate them to a purely private purpose, having no connection whatever with municipal affairs; and the power of the Legislature to do this is denied.

But few branches of jurisprudence have been more fully discussed by American Courts than the extent to which municipal corporations and their property are subject to leg-

islative control and disposition. But whilst it is conceded in nearly all the cases that a municipal corporation is a subordinate part of the State Government, organized for the more convenient administration of the local affairs of a particular district, and deriving its powers wholly from the Legislature, to whose general control and supervision it is subject, I am not aware that any case has gone so far as to hold that the Legislature may devote the funds of a municipal corporation to purposes confessedly private and having no relation to municipal affairs. But I deem it unnecessary for the purposes of this decision to review the authorities on this point, or to attempt to define with precision the limits of the legislative authority over the property and funds of a municipal corporation. It is established by an overwhelming weight of authority, and, I believe, is conceded on all sides, that the Legislature has the constitutional power to direct and control the affairs and property of a municipal corporation for *municipal purposes*, provided it does not impair the obligation of a contract, and by appropriate legislation may so control its affairs as ultimately to compel it, out of the funds in its treasury, or by taxation to be imposed for that purpose, to pay a demand when properly established, which in good conscience it ought to pay, even though there be no legal liability to pay it. (*Beals* v. *Amador County*, 35 Cal. 624; *Blanding* v. *Burr*, 13 Cal. 343; *People* v. *Board of Supervisors of San Francisco*, 11 Cal. 206; *Sharp* v. *Contra Costa County*, 34 Cal. 284; *People* v. *McCreery*, 34 Cal. 432; *People* v. *Alameda County*, 26 Cal. 641.)

It remains only to inquire whether the appropriation in this case was for a municipal or for a purely private purpose. The work in respect to which the services of the Commissioners were rendered was clearly one of great public importance. It related to the extension of the principal street of the city; and the enterprise was set on foot and ordered to be carried forward by the Board of Supervisors. The

law, as it then stood, it is true, directed the compensation to the Commissioners to be paid by means of assessments on the property benefited; and it may be assumed that when they accepted this employment, and performed the service, it was with the distinct understanding that they were to look to this source only for their compensation. But it appears from the affidavit of Mayor Selby that grave doubts were entertained whether the whole enterprise for extending the streets might not ultimately fail, and no assessments be collected out of which to defray the expenses; and it was possibly in view of this contingency that the Legislature deemed it but just and equitable that the city and county should advance the money to the Commissioners, and take the chance of being reimbursed out of the assessments. The Board of Supervisors having set on foot a plan for extending the principal street of the city through many blocks, and caused private citizens to expend their time and labor in furtherance of the enterprise, it may well be that when doubts arose as to the success of the undertaking the Legislature deemed it equitable that the hazard of the contingency should be borne by the city and county, and not by the Commissioners. But the compensation to the Commissioners is only an inconsiderable portion of the expense which was expected to result from the extension of the streets; all of which is to be assessed on the contiguous property, which it is supposed will be chiefly benefited by the improvement. But if the Legislature should decide, even after the whole enterprise is completed, that it would not be just to assess upon the contiguous property the entire cost of opening a great artery for trade and travel through the heart of a populous city, and should require a portion of the cost to be defrayed out of the city treasury, or by taxation on all the inhabitants, I am not prepared to say it would exceed its constitutional power. The opening of streets is clearly a municipal purpose, and whether the cost of such

enterprises shall be borne by the contiguous property, or by all the property of the city, or a certain proportion by each, is a matter for legislative discretion. It cannot, with propriety, be asserted that it is inequitable to compel all the property of a city to contribute toward opening and maintaining its principal highways. These views appear to be supported by the following authorities: *Thomas* v. *Leland*, 24 Wend. 65; *Brewster* v. *Syracuse*, 19 N. Y. 117; *People* v. *McSpedon*, 21 How. Pr. R. 178; *People* v. *Pickney*, 32 N. Y. 393; *People* v. *Morris*, 13 Wend. 395; *People* v. *Batchelor*, 22 N. Y. 128; *Police Commissioners* v. *County Court*, 34 Mo. 546; *Layton* v. *New Orleans*, 12 La. An. R. 515.

In this case all that the Legislature has attempted to do is to compel the city and county to advance, out of its treasury, a small portion of the cost of opening one of its chief thoroughfares until the amount shall be reimbursed by means of assessments on the property to be principally benefited, and I think the Act is clearly constitutional.

It is therefore ordered that the writ issue as prayed for.

RHODES, C. J., and TEMPLE, J., concurring:

We concur in the judgment.