The opinion of the .Court was drawn up by
Cutting, J.
From the records and evidence presented and referred to as exhibiting the question hereafter to be considered, it appears — that the petitioners, on April 6th, 1849, brought the original action before a magistrate for an alleged trespass by the respondent for cutting a quantity of white ash timber on their land, in the town of Embden, without their consent; that the respondent, being the defendant in that suit, was adjudged guilty, who appealed to the next term of the District Court, where the action was duly entered, and continued from term to term, until the October term, 1850, when it was tried and a verdict recovered by the respondent, on which verdict, after motion *114 tluly filed for a new trial had been heard and overruled, at the same term judgment was rendered.
It further appeal’s that, in 1851, these petitioners entered a petition for a review in the District Court, which process came regularly into this Court by the abolition of the former and a transfer of its powers to the latter Court, where, at the September term, 1853, the petition was "dismissed without prejudice.”
Again, at the succeeding December term, 1853, in this Court', another petition is entered praying for a new trial in consequence of the perjury of a certain witness on the former trial before the jury, and, at the December term, 1855, we perceive the following entry; viz.: — "And now in this term the parties appear, and after a full hearing of all matters and things concerning the same, the prayer of the petitioners is denied, and the petition ordered to be dismissed.”
At this last adjudication we may well pause and contemplate the rights of the parties as disclosed by their prior proceedings. In 1850, judgment had been rendered for the respondent, which became a verity, subject only to reversal on error within six years after the entering up thereof, or to be reviewed within three years from that time; both of which contingencies had transpired before the subsequent proceedings hereafter'to be considered, and consequently that judgment by the then existing laws became permanent and effectual forever. And why should it be otherwise? It was a judgment rendered by a Court of competent jurisdiction. It was based upon the verdict .of a jury. A motion to set the verdict aside had been overruled. It had passed the time of a reversal for error, and the ordeal of two petitions for a review, and the statute of limitations had forever barred its further interruption. Or, in other words, by force of the constitution .and the existing laws that judgment had become a vested right and incapable of annihilation, except by payment and satisfaction. Such was the opinion of this Court in the case of Treat v. Ingalls, 9 *115 Maine, 61, in delivering which, Weston, J., remarks that— "Judgments may be subject to be revised, according to laws existing at the time of their rendition. This is a fixed and settled qualification of rights vested under them. But, with this exception, there can be no higher title to any right or interest whatever, than what arises from a regular judgment of law.”
But, by the statute of 1859, c. 91, it was enacted, that a petition fer review, commenced within six months after its passage, might be maintained, notwithstanding there may have been an unsuccessful petition for review of the same action, when it shall be made to appear to the satisfaction of the Court, that a witness, in the original trial, testified falsely to a material fact and the petitioner was thereby taken by surprise and unable at the trial to produce evidence of the falsehood, which has since been discovered, &c., in which case the petitioner shall be entitled to a review, &c.
It next appears that the petition, now under consideration, was instituted within the time limited by the Act, which alleges matter sufficient to bring it within its provisions, and that after certain proceedings had in this Court at the September term, 1860, and the law term in 1861, which it becomes unnecessary to cofisider, the petition was finally heard at the succeeding term, a review granted, and exceptions were duly filed by the respondent, alleging, among other things, that the Judge erred in a matter of law in his construction as to the validity of the Act, and its constitutionality as affecting previously vested rights.
If the foregoing enactment was intended to be retrospective, it is not difficult to perceive that all judgments, rendered since the organization of the State, were by its provisions liable to be affected. Not because they might embrace an element of perjury, but because of the principle involved in the Act. If a review of such judgments may be ordered for one cause, it may be equally so for another, or any cause within the discretion of the Legislature. Then the salutary maxim of the common law "finis flnem litibus *116 imponit” would become obsolete, when all cases heretofore settled by the most solemn adjudications known to the law, involving all lights and titles acquired under them, might pass in review before a subsequent tribunal, long after witnesses had deceased or their memories had become impaired.
Human nature is so constituted that it seldom occurs, that the losing party is satisfied with the result of a trial; but charges a delinquency either upon the counsel, witnesses, Court or jury. All this such a party has undoubtedly the right to do, but it must be done upon his own responsibility and within the time and according to the forms prescribed by law. These petitioners had heretofore availed themselves of all their legal rights. Their days in Court had terminated, all legal remedies exhausted, and the time had arrived,' when their opponent, protected by the law, could repose in common with all other citizens, whose rights had vested, after much tribulation. But, it is contended, that the Legislature of 1859 inaugurated a retrograde movement, interrupting the former quietude and repose by removing all bars between the past and present. Such would virtually be the result, if the Act of that year is considered to be retrospective in its operation.
That the Legislature has constitutional jurisdiction over remedies is a proposition not to be controverted; but, after all existing remedies have been exhausted and rights have become permanently vested, all further interference is prohibited. Thus, we find enactments abridging the period of former limitations, which are rendered constitutional by a proviso, that suits may be commenced within a certain time after their passage, but none reviving and extending a limitation with such a provision, except it be the Act now under consideration.
We are not unmindful that the decision in Colby v. Dennis, 36 Maine, 9, is somewhat in conflict with our present views. It is there said, that the statute under consideration only affected the remedy; if so, that decision can have no application here; for we have seen that all remedies had been tried and exhausted.
*117 In Prop’rs Ken. Purchase v. Labaree, 2 Maine, 273, C. J. Mellen remarks that — "By the spirit and true intent and meaning of this section, every citizen has the right of ' possessing and protecting property’ according to the standing laws in force at the time of his ' acquiring it,’ and during the time of his continuing to possess it. Unless this be the true construction, the section seems to secure no other right to the citizen, than that of being governed and protected in his person and property by the laws of the land, for the time being. Such a provision, for such a purpose merely, would not have been introduced (into our constitution) even by jealousy itself,” &c.
Again, in Burch v. Newbury, 6 Selden, 394, the Court say, — " The misfortune of having vested rights, under judgments and decrees of our Courts, thus disturbed, is far from being trivial, if we consider that, on this principle, no judgment whatever in a court of law can bo rested upon as final.” See authorities there cited.
In view of the foregoing considerations, we conclude that, if the Act was intended to be retrospective, and thereby affected vested rights, it was manifestly unconstitutional; if prospective, the petitioners do not come within its provisions. But, in justice to a co-ordinate branch of the government, we charge no design to interfere with vested rights, unless we are to infer from some unpremeditated remark from one of the petitioners, that the Act was passed for their exclusive benefit, and was thus a specimen of special instead of general legislation. But the Act is susceptible of no such constructive infirmity. It does not necessarily recognize any such party as the petitioners, whose rights at the time of its passage had boon legally determined and all their remedies barred.
The Act is to be construed as prospective in its operation and thus constitutional. It operates imperatively upon the Court to grant a review in cases before open to a review for a specified cause, notwithstanding a former revievj had been denied, and also authorized the attachment of the respondent’s property on the petition. The Act was therefore ad *118 ditional, cumulative and prospective for a period of six months after its passage, when its period of limitation ex-' pired. Exceptions sustained.
Appleton, C. J., Rice, Kent and Walton, JJ.,- concurred.