## THE NAPA VALLEY RAILROAD COMPANY *v.* THE BOARD OF SUPERVISORS OF NAPA COUNTY.

PERFORMANCE OF PUBLIC DUTY.—Where a public body or officer has been empowered to do an act which concerns the public interest, the execution of the power may be enforced by writ of mandate.

COUNTY SUBSCRIPTION FOR RAILROAD STOCK.—Railroads concern the public interest as matter of legal judgment, and where the Board of Supervisors of a county are empowered to subscribe for the county to the capital stock, they may be compelled to subscribe by writ of mandate.

JUDICIAL REVIEW OF LEGISLATIVE ACTION.—The action of the Legislature in empowering a county subscription to the stock of a railroad company, is not open to review by the judicial department of the Government upon the question that the railroad is or will be of no public benefit.

POWER OF LEGISLATURE OVER COUNTIES. — The Legislature may compel a county to become a subscriber to a railroad already built, for the purpose of paying its debts, and to become a stockholder therein and issue its bonds for the stock, and to raise money by taxation and appropriate it to the payment of the bonds.

APPEAL from the District Court, Seventh Judicial District, Napa County.

The Court below gave judgment that a peremptory writ of mandate issue, and defendant appealed.

The other facts are stated in the opinion of the Court.

*W. W. Pendergast*, District Attorney of Napa County, for Appellants, argued that a railroad being a matter of public convenience and public interest, the Legislature might compel a county to tax itself and issue its bonds to build one, for by so doing the public convenience and interest would be subserved; but that where the road was already built and in operation, the public interest and convenience were already provided for, and the Legislature had no power to compel a county to subscribe and issue its bonds to pay off the debts of the company. He also argued that the fifth section of the Act

was not mandatory on the Board of Supervisors, and that it merely authorized and empowered the Board to make the subscription, and referred to the *People* v. *Supervisors of San Francisco*, 27 Cal. 661.

*C. Hartson*, and *P. W. S. Rayle*, for Respondent, argued that the Legislature not only had the power to compel a county to subscribe to the capital stock of a railroad company to pay its debts, but that if the power was conferred to make such subscription it became the duty of the Board to make it; and cited *Cornell* v. *Clark*, 3 Kernan, 143; *The Commissioners of Records* v. *Supervisors of New York*, 11 Abbott's Prac. Rep. 121; *Clarke* v. *City of Rochester*, 5 Abbott, 113; *Beckman* v. *Saratoga Railroad Company*, 3 Paige, 45; *Bloodgood* v. *The Mohawk Railroad Company*, 14 Wend. 57; and *Pattison* v. *Board of Supervisors of Yuba County*, 13 Cal. 198.

By the Court, SHAFTER, J.:

This is a petition for a mandamus to the Board of Supervisors of Napa County to compel them to subscribe the sum of thirty thousand dollars—the amount of the present indebtedness of said company—to the capital stock of the Napa Valley Railroad Company. The petition is based upon an Act passed at the last session of the Legislature, entitled "An Act concerning the Napa Valley Railroad, authorizing an election, and other matters relating thereto." (Acts 1866, p. 810.)

The case presents two questions, one relating to the construction of the Act, the other to its constitutionality.

First—It is claimed for the appellants that the Act does not command, but simply permits the Board to make the subscription.

The fifth section of the Act is as follows: "The Board of Supervisors of Napa County are hereby authorized and empowered to take and subscribe to the capital stock of the Napa Valley Railroad Company an amount equal to the present indebtedness of said company, and not exceeding thirty thou-

sand dollars, and issue and deliver to said company the bonds of said county in payment of and for said subscription, and receive therefor certificates of paid stock of said company equal to the amount of said bonds so delivered. * * * The subscription provided for in this section shall be made as soon as practicable by said Board of Supervisors, and within three months from the passage of this Act."

According to a well settled rule of construction, where a public body or officer has been "empowered" to do an act which concerns the public interest, the execution of the power may be insisted on as a duty. (*Mayor of the City of New York* v. *Furze,* 3 Hill, 615; *Cook* v. *Spears,* 2 Cal. 412; Smith's Com. 727.) Railroads concern the public interest as matter of legal judgment; (*Beckman,* v. *The Saratoga R. R. Co.* 3 Paige, 45; *Clarke* v. *City of Rochester,* 5 Ab. 124;) and however that conclusion may be opposed to the fact in the case at bar, makes no difference, the action of the Legislature on the question not being open to review by the judicial department of the Government. If then the section quoted did no more than "empower" the Board of Supervisors to sign for the stock, the Board would have no discretion in the matter. But the section, after conferring the power to subscribe, provides in terms that the power "shall be" exercised within three months. The language here is the very language of command, and settles the question by direct action without resort to reasoning.

Second—The counsel of the appellant admits in a general way the power of the Legislature to compel a county to subscribe to the capital stock of a railroad company within its limits or without them, and irrespective, too, of the wishes of its inhabitants, except as expressed through their representatives in the Senate and Assembly. (*Pattison* v. *The Board of Supervisors of Yuba County,* 13 Cal. 198.) But it is urged that this power is limited to cases where the road whose stock is to be subscribed for, has not been built but remains to be built; that, as matter of fact, the road in this case was complete both in construction and equipment before the Act of

1866 was passed, whereby all the advantages of the road had been permanently secured to the county and the public; and that the Legislature in attempting to compel the county to buy into the company after the road had so become an accomplished fact, violated the order of sequence established by the Constitution.

This reasoning is more specious than sound. The scope of the legislative power involved is misapprehended by counsel. The power is not limited by the circumstance mentioned, nor by any circumstance. It can neither be enlarged nor narrowed by averment, in its very nature. Matters *in pais*—that come and go—connecting themselves with one case and not with another—have nothing to do with the constitutional scope of the power, which is the power of taxation. The supposed constitutional order upon which the argument proceeds has no existence in fact as a limitation upon the power. " The Legislature can impose a general tax upon all the property of the State, or a local tax upon the property of particular political subdivisions as counties, cities and towns. The cases in which its power shall be exercised, and the extent to which the taxation in a particular instance shall be carried, are matters exclusively within its own judgment, subject to the qualification of equality and uniformity in the assessment. And except as specially restricted, its power of appropriation of the moneys raised is co-extensive with the power of taxation. It may appropriate them to claims which have no legal obligation and are founded only in justice. The power of appropriation which the Legislature can exercise over the revenues of the State for any purpose which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city or town, for any purpose connected with their present or past condition. In creating the law imposing the tax it can prescribe the objects to which the money raised shall be applied." (*Blanding* v. *Burr*, 13 Cal. 343; *People* v. *Alameda County*, 26 Cal. 642.) Under the rule stated in the foregoing citation, and we have no doubt of its entire correctness, the power of a State over a county and

its revenues is as its power over all the counties—that is, as its power over the whole people; and that a State Legislature, in the absence of clear and positive prohibition, may authorize the building of a railroad on State account, or make the State a subscriber to the capital stock of one already constructed or to be constructed in the future, and raise money by taxation and appropriate it to defraying the expenses in the one case and to a payment of the purchase money in the other, are questions which we do not consider as open to controversy. (*Beckman* v. *Saratoga and Schenectady Railroad Company*, 3 Paige, 45; *People* v. *Pacheco*, 27 Cal. 175.)

Judgment affirmed.

SAWYER, J., concurring specially:

I think it apparent, upon a consideration of the entire Act, that the Legislature intended to impose upon the Board of Supervisors of Napa County the duty of making the subscription in question in this case. I therefore concur in the conclusion attained in the first point discussed in the opinion of Mr. Justice SHAFTER. I also concur in the views expressed in discussing the second point; and in the judgment.