[No. 2,502.]

## PATRICK CREIGHTON *v.* THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO.

LEGISLATIVE POWER TO APPROPRIATE MUNICIPAL FUNDS. — The power of the Legislature to appropriate the moneys of municipal corporations in payment of claims, ascertained by it to be equitably due to individuals, though such claims be not enforceable in the Courts, depends largely upon the legislative conscience, and will not be interfered with by the judicial department, unless in exceptional cases.

LIABILITY OF SAN FRANCISCO FOR STREET WORK UNDER THE PATRICK CREIGHTON RELIEF ACT. — The circumstance that the contract, under which Patrick Creighton did certain street work in San Francisco, expressly provided that the city should in no event be liable for any portion of the expenses thereof: *held*, not to affect or in any manner invalidate the special Act subsequently passed by the Legislature (Stats. 1869-70, p. 309), requiring the city to pay him.

APPLICATION to the Supreme Court for mandamus.

The facts are stated in the opinion.

*William Irvine*, for Petitioner.

· The direction to the Supervisors to order the petitioner's claim paid is mandatory, and their duty ministerial. (*Nougues* v. *Douglass*, 7 Cal. 65; *McCauley* v. *Brooks*, 16 Cal. 11.) The statute, being founded on a manifest equity existing against a municipal corporation, was especially within the

province of the Legislature. (*People* v. *Supervisors of San Francisco*, 11 Cal. 206; *People* v. *Hawes*, 37 Barb. 440; *Stillwell* v. *Mayor of New York*, 19 Abbott, 376; *Town of Guilford* v. *Supervisors of Chenango County*, 18 Barb. 615; 3 Kernan, 143; *Blanding* v. *Burr*, 13 Cal. 343; *Hobart* v. *Supervisors of Butte County*, 17 Cal. 31; *People* v. *Pacheco*, 27 Cal. 209; *People* v. *Stewart*, 28 Cal. 395; *Beals* v. *Amador County*, 35 Cal. 632; *Davidson* v. *Mayor of New York*, 27 How. Pr. 342.)

In declaring the amount to be paid, the Legislature did not assume the exercise of judicial powers. (*Brewster* v. *City of Syracuse*, 19 N. Y. 116; *Thomas* v. *Leland*, 24 Wend. 65; *Morris* v. *People*, 3 Denio, 381; *Gifford* v. *Supervisors of Chenango County*, 13 N. Y. 143; *Rumney* v. *People*, 19 N. Y. 49; 4 Ind. Ch. Dec. 352; 5 Sandford, 10.) Nor did the provision in the contract, that in no case should the city be liable for the contract price of the work, affect the right of the Legislature to make the city liable. (*Stocking* v. *Hunt*, 3 Denio, 274.)

*J. M. Nougues*, for Respondent.

The Legislature, in directing the Board of Supervisors to order paid a specific sum of money, and interest thereon, to Patrick Creighton, assumed and exercised judicial powers. (Const. Arts. III and IV, Sec. 1; *People* v. *Hawes*, 37 Barb. 454; *Denny* v. *Mattoon*, 2 Allen, 361.)

The special relief Act, upon which the petitioner bases his right of action, is repugnant to the United States Constitution and to the State Constitution. (U. S. Const. Art. I, Sec. 10; State Const. Art. I, Secs. 3, 8, 16, and Art. IV, Sec. 37; *Baldwin* v. *Mayor, etc.*, 42 Barb. 553; *Bank of Columbia* v. *Oakley*, 4 Wheat. 235; *Taylor* v. *Porter*, 4 Hill, 140; *Rockwell* v. *Neaning*, 35 N. Y. 302; *Westervelt* v. *Gregg*, 13 N. Y. 209.)

By the Court, WALLACE, J.:

It appears by the petition here, praying a writ of mandamus against the Board of Supervisors, that Creighton, in April, 1861, entered into certain contracts, in writing, with the Superintendent of Public Streets and Highways of the City and County of San Francisco, for the time being, to grade Union street, from Taylor to Larkin, and to grade the crossing of Union and Jones streets, according to specifications, in the usual form in which such contracts were accustomed to be made, under the provisions of the statute in that behalf; and thereafter, in due time and manner, he fully performed the contract upon his part, and the assessment roll and warrants were thereupon delivered by said Superintendent to the petitioner, who collected something less than twenty thousand dollars assessments thereon, leaving a balance of upwards of thirteen thousand dollars of said assessments still unpaid. He attempted to enforce the payment of this aggregate balance by actions brought against the persons severally assessed, for their respective portions thereof. These actions failed, however, because the resolution of intention to do the work had not been "presented to the President of the Board for approval, according to the requirements of section sixty-eight of the Consolidation Act." (*Creighton* v. *Manson*, 27 Cal. 629.)

The petition further sets forth that he thereupon made application to the Legislature of the State for relief in the premises, and that that body having made a careful and complete examination of all and singular the terms and conditions of said contracts, and of all the facts in connection therewith, thereupon passed an Act for his relief. This statute is set out in the petition (Chap. 210, p. 309, Acts 1869–70), and it enacts that the Board of Supervisors are thereby " authorized and directed to order paid to Patrick Creighton the sum of thirteen thousand five hundred and six dollars,

with legal interest on the said amount from July, A. D. 1862, until paid, in United States gold coin, which said amount of principal remains due and unpaid to the said Patrick Creighton on the contract for grading Union street, from Taylor to Larkin, including the crossing thereof, in the City and County of San Francisco, as per assessment on record in Volume VIII of Street Assessments, in the office of the Superintendent of Public Streets and Highways in the said City and County of San Francisco." In a subsequent section of the Act, the Auditor of the city and county is directed to audit this sum, with interest thereon, and to issue his warrant therefor to Creighton, and the Treasurer of the city and county is directed, upon presentation of such warrant, to pay the same, "as other indebtedness of the said City and County of· San Francisco, in United States gold coin, to the above said Patrick Creighton," etc.

The Board of Supervisors, upon application made to them by Creighton for an order directing payment to be made to him, as provided in the Act, refused and still refuse to order the payment.

To this petition of Creighton, stating substantially the foregoing facts, the Board of Supervisors have filed a demurrer and an answer.

The ground of demurrer is, that the petition does not state facts sufficient to constitute a cause of action.

The answer alleges that the Act of the Legislature was passed against the will and consent of the City and County of San Francisco; that the sum of money by the Act directed to be paid to Creighton never was at any time a claim against the city and county, nor obligatory upon it, either legally or morally. The answer further sets up in defense of the action that, in and by the terms of the contracts for street grading, alleged in the petition as having

been entered into by Creighton with the Superintendent of Public Streets and Highways, it was, in fact, expressly stipulated that the said city and county should not be liable for any portion of the expense of the work, nor for any delinquency of the persons or property assessed.

The power of the Legislature to appropriate the moneys of municipal corporations in payment of claims ascertained by it to be equitably due to individuals, though such claims be not enforceable in the Courts, has been uniformly upheld ever since the case of *Blanding* v. *Burr*, 13 Cal. 351, in which this Court said: "The power of appropriation which the Legislature can exercise over the revenues of the State, for any purpose which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with their past or present condition, except as such revenues may, by the law creating them, be devoted to special purposes."

The sovereign power of appropriation of the public funds already in the Treasury or to be raised by taxation, in favor of individuals, is one, the exercise of which must depend largely upon the legislative conscience, and like most of the great powers of government, cannot be interfered with by us, unless in exceptional cases. The most usual cases in which this power has been exercised are those, like the one under consideration now, where an individual, having no legal claim in the sense of being capable of enforcement by judicial proceedings against a municipal government, has, nevertheless, in equity and justice, in the larger sense of those terms, a right to indemnity and compensation out of the public Treasury. As was said by DENIO, J., 3 Kern. 149: "The Legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation, in favor of individuals, to cases in which a legal demand exists against the State. It can thus recognize claims founded in equity and justice, in the largest sense of these

terms, or in gratitude, or charity.    Independently of express constitutional restrictions, it can make appropriations of money whenever the public well being requires or will be promoted by it, and it is the judge of what is for the public good."

The admitted fact here that Creighton had performed labor in the improvement of the public street, and of which the municipal government and people of San Francisco had the benefit, and that he had been unable to obtain compensation therefor, only because the principal officer of the municipal government had neglected to observe the statute requiring him to sign his name to the resolution under which the work was done, presented a case fully as persuasive in its circumstances as most of those which have been the subject of legislative relief in this State or elsewhere.

There is nothing in the circumstance that the contract under which the work was done contained a stipulation by which it was provided that the City of San Francisco should, in no event, be liable for any portion of the expense thereof. The Legislature, in passing the statute, have proceeded upon the equity of Creighton to be relieved by reason of matters occurring subsequently to the making of the contract, and not contemplated by it or anticipated when it was entered into.    Besides, it would be difficult to show that these parties, by the stipulations of that contract, had, in terms or by fair construction, limited or taken away the constitutional power of the Legislature to extend relief to the public creditors, or those it considers to be such, as it may see fit; and the existence of such a power is all that we have to inquire into here.

The writ must issue, as prayed for, and it is so ordered.

CROCKETT, J., concurring:

The questions involved in this case are not distinguishable in principle from those decided since the last term in the case of *Sinton* v. *Ashbury*. On the authority of that case I concur in the opinion that the plaintiff is entitled to the writ as prayed for.