<hr />

[No. 5225.]

## JOHN HOAGLAND v. THE CITY OF SACRAMENTO.

CLAIM FOR DAMAGES AGAINST MUNICIPAL CORPORATION.—If the Levee Commissioners of a city, by virtue of authority vested in them by an act of the Legislature, and independent of the city authorities, excavate a canal in the vicinity of the city, to turn the water flowing in a river, and prevent it from overflowing the city, one injured by the water flowing in the canal has no claim, equitable or legal, against the city for his damages.

POWER OF LEGISLATURE OVER A CITY.—The Legislature has no power to compel a city to pay a claim made against it, and which it is under no obligation, moral or equitable, to pay; nor can the Legislature require a Court to render judgment for said claim, upon proof of the amount thereof.

APPEAL from the District Court, Sixth Judicial District, County of Yolo.

The facts are stated in the opinion.   The case of *Green* v. *Swift*, 47 Cal. 537, throws further light on the litigation connected with this matter.

*John Heard*, for the Appellant.

The District Court erred in sustaining the demurrer to the plaintiff's complaint and in entering judgment in favor of the

defendant, because the act entitled " An Act to enable John Hoagland and others to sue the City of Sacramento," set out in the complaint upon which this action is founded, is a valid act, founded in manifest equity, and is a legitimate exercise of legislative authority, its purpose being to provide a *legal remedy* to enable the plaintiff to enforce a *just* and *equitable* claim (not before enforceable in the Courts) against a *municipal* corporation for damage caused by a *public work,* constructed for the *exclusive* benefit of the corporation. (See Cooley on Constitutional Limitations, 232, 233, and 361, and authorities cited in note 1; Cooley on Taxation, 91, 104, 105, 110, 111, and 479; *Sharpless* v. *Mayor &c. of Philadelphia,* 21 Pa. St. 147; *Town of Guilford* v. *Sups. of Chenango County,* 13 N. Y. 143; *Creighton* v. *San Francisco,* 42 Cal. 450; *Sinton* v. *Ashbury,* 41 Cal. 525; *Beals* v. *Amadore,* 35 Cal. 625; *Blanding* v. *Burr,* 13 Cal. 343.)

The enabling act, *in all its provisions,* is supported by reason and justice, by the letter and spirit of the State Constitution, and by the text-books and adjudged cases of the whole country. (See Cooley on Taxation, 91, 104, 105, 110, and 111; Cooley on Constitutional Limitations, 231, note 1, 232, 233, 361, and the numerous cases cited in note 1; *Friend* v. *Gilbert,* 108 Mass. 408; *Brewster* v. *Syracuse,* 19 N. Y. 116; *Williamson* v. *Cheatham,* 43 George, 258; *Guilford* v. *Sups. of Chenango County,* 13 N. Y. 143; *Sharpless* v. *Mayor &c. of Philadelphia,* 21 Pa. St. 147; *Creighton* v. *San Francisco,* 42 Cal. 450; *Sinton* v. *Ashbury,* and cases cited, 41 Cal. 525; *Beals* v. *Amadore,* 35 Cal. 625; *Blanding* v. *Burr,* 13 Cal. 343.)

*Creed Haymond,* for the Respondent.

Taxation for municipal purposes cannot be imposed without the consent of the corporation.

The constitutional provisions involved in the discussion of this point are sec. 21 of art. 1, sec. 1 of art. 3, sec. 37 of art. 4, and sec. 4 of art. 11.   They read as follows:

" Sec. 21, art. 1.   This enumeration of rights shall not be construed to impair or deny others retained by the people.

" Sec. 2, art. 3. The powers of the Government of the State of California shall be divided into three separate departments— the legislative, the executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases hereinafter. expressly directed or permitted.

" Sec. 37, art. 4. It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict *their power of taxation, assessment, borrowing money,* contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debts by such municipal corporations.

Fortunately for this people, local self-government was not omitted as a factor in our form of Government. " The policy of creating local, public, and municipal corporations for the management of matters of local concern runs back to an early period in our colonial history, is exhibited in all our legislation, and is expressly or impliedly guaranteed in our State Constitutions." (1 Dillon on Municipal Corporations, sec. 9.) That I have not overstated the constitutional guaranty will be apparent by reference to Cooley's Const. Lim. chap. 8, and *The People* v. *Hurlburt,* 24 Mich. 44; *State* v. *Noyes,* 10 Fost. (N. H.) 292; *Bow* v. *Allenstown,* 34 N. H. 351; *Caldwell* v. *The Justices,* 4 Jones' Eq. 323; *Webster* v. *Harrington,* 32 Conn. 131; *Com.* v. *Roxbury,* 9 Gray, 593 to 511; *People* v. *Hurlburt,* 24 Mich. 44; *People* v. *Mahany,* 13 Mich. 481; Cooley on Taxation, p. 474; *People* v. *Lynch,* 51 Cal. 15.

The State may compel the corporation to collect the State tax—to levy and collect the tax to sustain the local police force; for these and kindred duties belong to it as an agent of the State government.

There is also an admitted power in the State government to compel a political corporation to meet its contract obligations and pay its just debts. This power rests, not upon the right to tax without the consent of the corporation, but upon the narrower ground, that when a political corporation has contracted a debt or incurred an obligation, it has already taken the initia-

tory steps in taxation, and has, in effect, given its consent to the subsequent steps, so far as they may be essential to the discharge of such debt or obligation. "No matter, therefore," says Mr. Cooley, "what the purpose of any lawful municipal contract, the taxation to perform it must be regarded as taxation by consent of the people who made it." (Cooley on Constitutional Limitations, 479.)

The most that can be claimed under the California cases antedating *The People* v. *Lynch* is, that where a state of facts exists between an individual and a county which, as between individuals, would give one a right of action against another, and no remedy exists, the Legislature may provide a remedy.

The power to adjudge the liability of the defendant in an action for the recovery of damages is judicial, and not legislative.

No injury, in a legal sense, having been done to plaintiff by the city or any one else, and no claim or obligation in favor of the plaintiff existing against the city or any one else, under the law of the land in force at the time the loss was sustained, it was not the exercise of legislative power to create such claim or obligation and direct its enforcement against the city.

The act in question is in form a law, but in effect a legislative decree. It adjudges the city liable for the consequences flowing from the construction of the canal—strips the Court of all power to pass upon the question of liability, and reduces the power of the Court, in that respect, to the mere ministerial one of entering a judgment pronounced by the Legislature.

Time does not permit on this argument the examination at length of the numerous authorities which we believe sustain this point, and we must content ourselves with a reference to them, and the expression of the belief that the Court, after examination, will conclude that the act is an invasion of the judicial power. (Webster's Argument, Am. Jur. vol. 7, pp. 118, 119; *Mayor* v. *Baltimore*, 26 Md. 206; *Atkinson* v. *Dunlap*, 50 Me. 116; *Pryor* v. *Downey*, 50 Cal. 388; *Denny* v. *Mattoon*, 2 Allen, 383; 1 Kent Com. S. P. 456; *Bates* v. *Kimball*, 2 Chip. D. 88; *Griffin* v. *Cunningham*, 20 Gratt. 51; *Shawnee Co.* v. *Carter*, 2 Kan. 131; *Guy* v. *Hermance*, 5 Cal. 74; *People* v. *Hawes*, 37 Barb. 454; *Baldwin* v. *New York*, 42 Barb. 552.)

*T. J. Clunie* and *Haymond & Coggins*, also for the Respondent.

No injury in a legal sense having been done to plaintiff by the city or any one else, and no claim or obligation in favor of the plaintiff existing against the city or any one else, under the law of the land in force at the time the loss was sustained, it was not the exercise of legislative power to create such claim or obligation and direct its enforcement against the city. (See authorities cited above.)

*John Heard* and *J. R. McConnell*, for the Appellant in reply.

There has never been any question but that the Legislature could directly grant money to a citizen, whether justly owing or not. It can do this for the State; why not for State subdivisions? There is no express constitutional provision against it; from what clause do we get it, then, by "*necessary implication*"? We really know of none.

If there is no prohibition, what is there to prevent the Legislature authorizing and even requiring a city to pay to an individual either a sum certain, or so much as a Court or commission shall award.

But the question is *res adjudicata.* (*Town of Guilford* v. *Chenango County*, 3 Kern. 143; *Blanding* v. *Burr*, 13 Cal. 352, *et seq.*; Dillon, *ut supra*, and especially pp. 90, 91, and notes; *Brewster* v. *Syracuse*, 19 N. Y. 116–119; *Beals* v. *Amador County*, 35 Cal. 630; *People* v. *Mayor of Brooklyn*, 4 Comstock, 419; Cooley, *ut supra; Darlington* v. *The Mayor*, 31 N. Y. 164.)

The legislative judgment as to whether Hoagland had a claim, moral or equitable, against the State, is conclusive, and will not be reviewed by the judiciary. (*Harding* v. *Goodlett*, 3 Yerg. 41; Dillon on Municipal Corp. p. 91, sec. 44.)

By the Court, WALLACE, C. J.:

This action was commenced in April, 1876, to recover of the city twenty-three thousand eight hundred and fifty dollars dam-

ages, with interest on that sum from December 24th, 1867, in United States gold coin, with the costs of the action.

The City of Sacramento appeared and filed a demurrer to the complaint, the grounds of the demurrer being, first, that the complaint does not state facts sufficient to constitute a cause of action; and, second, that the cause of action in the complaint set forth is barred by the Statute of Limitations.

The demurrer having been sustained, and judgment dismissing the action having been rendered in the Court below, this appeal is brought for the purpose of reversing the judgment.

The allegations of the complaint are substantially as follows: That in the year 1862 the Levee Commissioners of the city directed a canal to be cut above the mouth of the American River, and that in the same year the canal was accordingly cut, so as to straighten and turn the channel of the American River into the Sacramento River at a point one half mile or more above the mouth of the American River, and opposite to the lands of the plaintiff, situated on the Yolo bank of the Sacramento River, and that by means of said canal the waters of the American River were conducted into the Sacramento River nearly at right angles to the course of the latter river. That prior to the cutting of the canal the waters of the American River had always been accustomed to flow into the Sacramento one half mile or more below the lands of the plaintiff, and that consequently those lands were never injuriously affected by the current or high waters of the American River.

It is also alleged in the complaint that in the month of December, in the year 1867, the waters of the Sacramento River being at the time comparatively low, those of the American River became very high, and flowing through the canal passed into and through the Sacramento River upon and against the lands of the plaintiff upon the western bank of the Sacramento, with such violence and force of current as to undermine and utterly destroy a considerable portion of the lands, with the dwelling-house, out-houses, stables, barn, orchard, and growing crops of the plaintiff, and greatly injure his other lands not wholly destroyed by the action of the waters of the American River.

It is also alleged in the complaint that said Levee Commis-

sioners ordered the opening of said canal, and caused it to be opened solely and exclusively under and by virtue of the author- ity conferred upon them by an Act of the Legislature of the State entitled " An Act concerning the construction and repair of levees in the County of Sacramento, and the mode of raising revenue therefor, approved April 9th, 1862 " (a); and not under or by virtue of any authority conferred upon them by said city, its corporate authorities, or government; but that said canal was cut for the exclusive use and benefit of said city, and the said city, ever since it was cut, has enjoyed and still does enjoy its benefits.

It is further alleged in the complaint that on the 11th day of March, 1876, an act was passed by the Legislature entitled " An Act to enable John Hoagland and others to sue the City of Sacramento," (b) and that until the passage of that act the plaintiff " never had any right or claim against the said city enforceable before the Courts for the wrongs, injuries, and dam- ages " aforesaid. The Act of March 11th, 1876, entitled " An Act to enable John Hoagland and others to sue the City of Sac- ramento " is certainly one of an extraordinary character—in fact, neither the researches of counsel, nor our own, have dis- covered its parallel in the history of legislation in this country.

It provides, in substance, that it shall be lawful for the plaintiff to sue the city, and in such action it shall be lawful for him to recover against the city the amount of damages which he sus- tained by reason of the floods which occurred in the American River in December, 1867. Upon the trial of the action the Court is directed to ascertain the amount of the damage sus- tained by the plaintiff in 1867 in United States gold coin; to add to that sum interest at seven per cent. per annum, to be calculated from the time the damage occurred; and is thereupon commanded to render judgment in favor of the plaintiff and against the city for the aggregate amount.

The judicial function, upon the hearing of the case, is ex- pressly limited to the mere estimate of damage sustained and interest accrued, and judgment thereon in favor of the plaintiff, according to the legislative command, necessarily follows.

The city is not to be heard at all except upon the amount of

damage originally suffered by the plaintiff and the amount of interest to be added thereto. All other possible defenses which she might have otherwise made against the claim are disposed of in advance against her by the legislative judgment appearing upon the face of the statute.

The canal, which was the remote cause of the damage, was not constructed by the city; and the Levee Commissioners, who superintended and directed the work, acted, as the plaintiff alleges in his complaint, " not under or by virtue of any authority conferred upon them by said city, its corporate authorities, or government," but " solely and exclusively under and by virtue of the authority conferred upon them by an Act of the Legislature of this State entitled ' An Act concerning the construction and repairs of levees in the County of Sacramento, and the modes of raising means therefor,' approved April 9th, 1862."

The canal having been constructed by agencies wholly foreign to the city government, and acting independently of its control, it is difficult to discover upon what grounds it could be said that a claim for damages of which the canal was the remote cause existed against the city in favor of the plaintiff.

It is conceded that, except for the Act of March 11th, the plaintiff held no claim for compensation against the city which was capable of enforcement in the Courts.

What claim, then, did he have *in foro conscienciæ*, or in equity—even in the most unrestricted sense in which that term is used—to be compensated by the city for the losses he had sustained? We have seen already that the construction of the canal was not the act of the city, nor does it even appear by the record to have been constructed upon her petition or solicitation, or even with her consent or approbation. The work was directly originated and conducted by the State, through the agencies provided by the Statute of 1862, enacted by the Legislature for that purpose; and had the city, by any legal means, attempted to prevent or control it, she must have failed in doing so. The mere proximity of the city to the line of the canal, and the fact that its completion operated in a measure to protect her from the overflow of the American River, do not create a

liability upon her part to compensate the plaintiff; for the benefits she has received, like the damages the plaintiff has sustained, are but the incidents, not unusual or extraordinary, arising from the construction of public works or improvements by the Government.

In this view it is clear that the Act of March 11th is one in excess of the legislative authority, and cannot be supported. While the legislative power may, as it frequently does, interpose to furnish a remedy or remove an impediment, which prevents the enforcement of a legal or equitable right or duty already existing, it cannot, even against a municipal corporation, *create a claim* without the consent of those who are to be taxed with its payment. Such a procedure, while taking on the form of a statutory enactment, would amount to mere spoliation. "So he who was never bound, either legally or equitably, cannot have a demand created against him by mere legislative enactment." (Cooley's Const. Lim. 669.) This may be stated as the grand result of the authorities in which the power of the Legislature to enact retrospective laws is considered.

Referring to the scope of legislative authority in this respect, Mr. Chief Justice Dixon observed as follows: "An examination of these [the adjudicated cases] will, I believe, show that such legislation has not been permitted to conclude the rights of parties, except when legal or equitable rights or obligations had grown up out of the previous lawful acts and dealings of the parties," etc. (*Hasbrouck* v. *The City of Milwaukee*, 13 Wis. 50.)

Even in the class of cases referred to by the learned Chief Justice, it would perhaps be difficult to indicate in advance the precise extent to which the legislative ascertainment of the existence of an equitable claim would be open to review in the Courts. Upon the facts appearing in a particular case for instance, it might, as an original proposition, be fairly debatable whether the equitable claim, assumed as the basis of legislative relief, really existed. Under such circumstances the legislative determination in its favor, if not actually conclusive, would, at all events, be entitled to much deference. But the case in hand presents no such feature, for, as seen already, it affirmatively

appears upon the face of Hoagland's complaint that in March, 1876, he held nothing which could be characterized as in any sense a claim against the City of Sacramento for reimbursement on account of the losses he had sustained nine years before, by reason of the flood then occurring in the American River.

The statute of March 11th, 1876, providing for the payment of his assumed claim by the City of Sacramento, without the consent of the city, cannot be supported.

The demurrer to the complaint was, therefore, correctly sustained by the Court below, and its judgment must be affirmed.

Neither Mr. Justice NILES nor Mr. Justice McKINSTRY expressed an opinion.

(a) This act (so far as material to the controversy here) is as follows:

"Sec. 1.  A Board of City Levee Commissioners, with the powers and duties hereinafter provided, *is hereby created for the City of Sacramento,* which said Board shall, until its successors are elected and qualified as hereinafter provided, consist of H. T. Holmes, Charles Crocker, William T. Knox, Charles H. Swift, and Francis Tukey.  At the general election in the year 1862, and at the general election every four years thereafter, there shall be elected, by the qualified electors of the City of Sacramento, three members of said Board, who shall each hold their office for the term of four years, from and after the first Monday in March, 1863, and until their successors are elected and qualified; and at the general election in 1863, and at the general election held every four years thereafter, there shall be elected, in like manner, two members of said Board, who shall each hold his office for the period of four years, from and after the first Monday in March, 1864, and until their successors are elected and qualified; *provided,* that the members of said Board, named herein, shall determine by lot, at the first meeting of said Board, which three of their number shall go out of office on the first Monday of March, 1863; and *provided,* further, in case any vacancy occurs in the Board, it shall be filled by the remaining members of the Board.

"Sec. 2.   A Board of County Levee Commissioners for Swamp Land District No. 2, with the powers and duties hereinafter provided, is hereby created, which said Board shall, until its members are elected and qualified, as hereinafter provided, consist of A. Runyon, Josiah Johnson, and Washington Fern, who shall, at their first meeting, determine by lot which of them, respectively, shall hold office for one, two, and three years from the first Monday in October next and until their respective successors are elected and qualified; and at the general election in 1863, and at each general election thereafter, the voters of the county outside of the city, and within Swamp Land District No. 2, shall elect one Levee Commissioner, who shall take his seat · in the Board on the first Monday in the month next succeeding his election, and shall hold office for three years, and until his successor is elected and qualified.   If from any cause a vacancy shall occur in the Board, it shall be filled by the remaining members of the Board..

" Sec. 3.   As soon as the Board of State Swamp and Overflowed Land Commissioners have finally adopted a plan for the reclamation of Swamp Land District No. 2, they shall certify so much of the plan, specifications, and estimates as relate to the work adjacent to the American River, and as relate to the work adjacent to the Sacramento River, and north of the south line of Y Street, in the City of Sacramento, to the Board of City Levee Commissioners; and said Board, as soon as possible, after receiving such plans, specifications, and estimates, shall, if they approve the same, proceed to cause so much of the levee required by said plans as lies within the city to be constructed on the line, and in exact accordance with the plans and specifications certified to them; *provided,* however, that they may cause such levee to be made broader and higher than the width and height designated; and *provided,* further, that if the Board of City Levee Commissioners do not approve the plans certified to them, or disapprove of any part thereof, or of any part of the specifications and estimates therefor, they shall notify the State Commissioners of the fact, whereupon a joint meeting of the two Boards shall be held, and the determination arrived at by such joint meeting or meetings shall be final of the matters in controversy;

and *provided,* further, said City Levee Commissioners shall have, and *they are hereby given, power and authority to turn or straighten the channel of any portion of the American River deemed necessary for the protection of the city.*"

(*b*)  This act is as follows:

"Sec. 1.   It shall be lawful for John Hoagland, James Reed,. Mary Limsel, George Cooper, Rebecca C. Hoagland, William B. Todhunter, and Henry Limberger, in his or her name and behalf, to institute an action at law in any Court of competent jurisdiction, in Yolo or Sacramento County, in this State, against the City of Sacramento, and in each action to recover against said city the amount of damage, if any, that he or she sustained by reason of the diversion of the waters of the American River into the Sacramento River through a canal cut by the order or direction of the Levee Commissioners of said city, in the year 1862, above the mouth of said American River.

"Sec. 2.   If upon the trial of any of said cases it shall appear that the plaintiff has sustained damage to his or her property, real or personal, by reason of said canal, and the diversion of said water through it into the said Sacramento River, the jury, or,. if a jury trial be waived, the Court, shall ascertain and find the amount of such damage, at the time it was sustained, in United States gold coin; and judgment shall be rendered in favor of the plaintiff for the amount of said damages (together with seven per cent. per year on the same from the time said damage was sustained till the trial of said case.)

"Sec. 3.   The judgment provided for in the last section shall be a full satisfaction for all damage that has been, or that may be, sustained by the plaintiff, and a full release of said city from any further liability or sale, on account of said canal, and diversion of such waters into the Sacramento River through the same.

"Sec. 4.   After final judgment is rendered in any of said cases, the plaintiff may file a certified copy thereof in the office of the City Auditor of said city, and the amount of said judgment shall, from the time of filing thereof, become a debt of said city to the plaintiff.

" Sec. 5.  Immediately after the filing of said copies of said judgments, the City Auditor shall draw in favor of each plaintiff, or his assignee, three warrants, each warrant for one-third of said judgment, which warrant shall be made payable out of a special fund to be provided by said city for such payment.

" Sec. 6.  The said warrants shall be numbered, and the first shall be made payable one year after its date ; the second shall be made payable two years after its date ; and the third shall be made payable three years after its date.  Said warrants shall call for seven per cent. interest per year from their date, and shall be made payable in United States gold coin, and the interest shall be made payable annually, at the end of each year, on each of said warrants.

" Sec. 7.  The Board of Trustees of said city shall, after said warrants are issued, annually levy a tax on the taxable property in said city sufficient to pay said warrants and the interest punctually, as the same mature.  Said tax shall be levied and collected as other city taxes.

" Sec. 8.  At any time after the plaintiffs, or either of them, shall file his or her complaint under the provisions of this act, and before judgment is recovered, it shall be lawful for the City Trustees of said city to offer judgment for such amount as they may believe just ; and if the plaintiff refuses to accept the judgment so offered, he or she shall not receive any costs, unless the recovery is more than the sum offered.

" Sec. 9.  This act shall take effect and be in force from and after its passage."