THE STATE OF KANSAS, *ex rel.*, &c., v. THE BOARD OF COMMISSIONERS OF SHAWNEE COUNTY.

STATE ROAD—*Power of Legislature to Establish.* The legislature has the power to establish a state road and cast the cost and expense thereof upon the county in which the road lies, and this without submitting the question in any form for approval by the county commissioners or any other county officers or the people of the county; and to this end may itself appoint the commissioners to locate the road, prescribe their fees, give to them the power to adjust the land damages, and require the county officers to issue warrants therefor without any revision or control of their proceedings.

*Error from Shawnee District Court.*

MANDAMUS brought by *The State of Kansas*, on the relation of the attorney general thereof, against the *Board of Commissioners* of Shawnee county, to compel the defendant to audit and pay a part of the cost and expense of establishing a certain state road. The facts appear in the opinion. November 12, 1881, the district court sustained defendant's motion to quash the alternative writ which had been herein issued, and gave judgment accordingly. The plaintiff brings the case here.

*W. A. Johnston*, attorney general, and *M. T. Campbell*, for plaintiff in error.

*A. H. Vance*, county attorney, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The single question in this case is, as to the constitutionality of chapter 146, Laws 1881. That act established a state road from Grantville to Topeka, and cast the cost thereof on the two counties of Shawnee and Jefferson, in which the road was to lie. No discretion was given to any county officer in respect to the establishment of the road, but after the commissioners named in the act had finished their work, and located the road, then the county commissioners of the two counties were directed and required to pay

the expense thereof out of their respective treasuries; and on this ground alone the constitutionality of the act is challenged. No minor question is presented — nothing suggested as to the title of the act, the manner of its passage, or any particular section or provision; but counsel urge this alone, that the legislature has no power to establish a state road, and then compel a county to bear the cost and expenses thereof. We quote from the brief:

" We cannot see by what authority the legislature can establish a *state road,* and *compel Shawnee county* to pay for it. It takes away, or attempts to, the discretion vested in the tribunal transacting county business, and compels them to appropriate out of the county fund a large sum of money to pay for a road over which they have nothing to say as to whether it shall be established or not. We submit the legislature is not clothed with any such unlimited power."

Now upon this we remark: First, that if compelling a county to bear the expense of a state road is a violation of the constitution, it has been a frequent sin. There has been scarcely a single session of the legislature since the admission of the state in which similar acts have not been passed. In the very first session, by ch. 70, Laws 1861, forty-two state roads were authorized, whose expenses were wholly cast upon the counties through which they ran. In 1862, three acts of a similar nature were passed. (Ch. 177–8–9.) In 1863, there were also three similar acts. (Ch. 51–3–4.) In 1864, by ch. 110, sixty-four state roads were thus established. This act differed slightly from those previously cited, in this respect, that the approval of the county board of commissioners was required before land damages were to be paid, and that to this extent it gave the county officials some control; but as to other expenses there was no discretion. In 1865, by ch. 65, fifty-one state roads were established in the same manner and upon the same conditions as prescribed by the act of 1864. In 1870, by ch. 97, thirty-four state roads were thus established. In 1871, by ch. 132, sixty-one state roads were thus established. In 1874, by ch. 113, eight roads were thus established. In 1877, by ch. 164–5–9, three roads

were thus established. In 1879, by ch. 183, one road was established. In 1881, besides the act in question, ch. 147 established another state road, and in a similar way cast the burden on the counties through which it passed. It will be seen from this enumeration that it has been the constant practice ever since the admission of the state, and hitherto unchallenged, to establish state roads and cast the cost and expense thereof upon the counties through which they ran. It is true, the number of these acts does not determine their constitutionality, but it shows at least the general understanding of the scope of legislative power, and, after such repeated action by the legislature and such general acquiescence throughout the state, the courts may well hesitate before declaring such action in conflict with the constitution.

Second, it will be borne in mind that the purpose for which this expense is cast upon the county is a purely public purpose—one that is universally and without question recognized as such. It is not like compelling a county to take stock in a railroad corporation, or to aid in the building of a railroad, or to invest its public moneys in any enterprise in which there is something of private interest. A public highway is a matter solely of public interest. The laying-out and keeping in order of highways is one of the ordinary duties of counties and cities.

Third, we remark, that while the road is open to the use of all citizens from all parts of the state, it is yet of special benefit and value to the county upon which the burden of its establishment is cast. There is no casting upon one community the burden of a public enterprise which is specially beneficial to the citizens of some other community. It is not like an attempt to tax the citizens of Topeka with the cost of improving the streets of Lawrence. It simply casts upon the counties of Shawnee and Jefferson the cost of roads wholly within their territorial limits, and it is making each county bear the burden of public improvements within such limits. It is true, it is called a state road, but there is no intrinsic difference between a state road, a county road, and a township

28—28 KAS.

road — nothing which makes one more than the other of value to the public. This road is of none the less value to the people of Shawnee county because it is called a state road, than it would be if called a county road. We know of no reason why the legislature might not pass an act declaring all highways state roads, and place the management and control of them in commissioners appointed directly by the state; and yet if such an act were passed, the special value and benefit of each road to the community in which it is located would be unchanged.

Fourth, we remark that there is in this legislation no usurpation on the province of the judiciary. It does not adjudge any existing claim to be a legal demand against the county. It does not attempt to pass as to the validity of any such claim. It touches no past transaction, but simply orders that certain work be done in the future, and provides what public organization shall bear the burden of the work. In this respect it differs from such cases as that of *Hoagland v. Sacramento*, 52 Cal. 142; *State v. Hampton*, 13 Nev. 439.

And finally we remark that counties are purely the creation of state authority. They are political organizations, whose powers and duties are within the control of the legislature. That body defines the limits of their powers, and prescribes what they must and what they must not do. It may prescribe the amount of taxes which each shall levy, and to what public purpose each shall devote the moneys thus obtained. It may require one county to build a certain number of bridges at certain specified places, and of a particular size and quality. It may require another to open roads in given localities, and another to build a court house and to levy a tax to a prescribed amount for the purpose of paying therefor. In short, as a general proposition all the powers and duties of a county are subject to legislative control; and provided the purpose be a public one and a special benefit to the county it may direct the appropriation of the county funds therefor in such manner and to such amount as it shall deem best. It may give a discretion to the county commissioners or other officers

elected by the citizens of the county, or it may itself appoint the officers who shall determine the improvement or the amount of expenditure. Authorities are not wanting to sustain these views. Cooley, in his work on Constitutional Limitations, p. 232, after referring to several cases, adds these words:

"If these cases, which are referred to in the note, are sound, the limitations which rest upon the power of the legislature to compel municipal corporations to assume and discharge obligations, can only be such as spring from the general principles governing taxation, namely, that the demand or purpose for which the tax is levied shall be such as to constitute a proper charge or burden upon the state, or portion of the state, taxed to pay or to accomplish it. But upon this question the legislature is vested with discretionary and compulsory power, and its decisions are not subject to review in the courts. They must be final, unless in clear cases, where, there being no ground to adjudge the purpose to be a proper one for taxation, the legislature may be held to have proceeded unwarrantably; and perhaps there is still a further limitation, that if the claim is unadjusted and in dispute, the legislature has no authority to adjudicate upon it, but must leave the exercise of the judicial function to the ordinary tribunals."

See in support of these views the following authorities: *Kimball v. City of Mobile*, 3 Woods's Circuit Court, 555; *New Orleans v. Clark*, 95 U. S. 644; *Kirby v. Shaw*, 19 Pa. St. 258; *City v. Field*, 58 Pa. St. 320; *Thomas v. Leland*, 24 Wend. 67; *Guilford v. Supervisors of Chenango*, 18 Barb. 615, (13 N. Y. 143;) *People v. Mitchell*, 35 N. Y. 551; *People v. Mayor, &c., of Brooklyn*, 4 N. Y. 419; *People, ex rel., v. Flagg*, 40 N. Y. 401; *City v. Home for Friendless Women*, 50 Ind. 215; *People v. Power*, 25 Ill. 187; *Slack v. Rld. Co.*, 13 B. Mon. 26; *Mayor, &c., v. Sehner*, 37 Md. 180; *O'Brien v. Co. Comm'rs*, 51 Md. 15; *Guilder v. Otsego*, 20 Minn. 74; *State, ex rel., v. County Court of St. Louis*, 34 Mo. 546; *Rld. Co. v. Napa County*, 30 Cal. 435; and 1 Dillon on Municipal Corporations, ch. 4.

Our conclusion therefore is, that the act in question is constitutional. The judgment of the district court will there-

fore be reversed, and the case remanded with instructions to overrule the motion to quash.

All the Justices concurring.